58 P.3d 92

Glen and Elaine J. MUNNS, husband and wife, and Farm Bureau Mutual Insurance Company of Idaho, Plaintiffs–Respondents–Cross Appellants,

v.

SWIFT TRANSPORTATION CO., INC., Defendant–Appellant–Cross Respondent,

and

Michele L. Fowle; Wade and Jane Doe Zollinger, husband and wife; Tadd and Tamara Jenkins, husband and wife, d/b/a Bish's and John Does 1–5, Defendants.

No. 26623.

Supreme Court of Idaho, September 2002 Term of Court.

Nov. 6, 2002.

Thompson & Stephens, P.A., Idaho Falls, for appellant. James D. Holman argued.

Dunn & Clark, Rigby, for respondents. Robin D. Dunn argued.

WALTERS, Justice.

This is a personal injury action arising from the collision of Glen Munns' car with a dead horse on the road. The horse had been hit and killed by a truck belonging to Swift Transportation Co., Inc. Following trial, Swift Transportation and its driver who had killed the horse were found 80% at fault for Munns' accident. Swift moved the district court for a new trial. The district court denied Swift's motion for a new trial as to both liability and damages, but conditionally directed a remittitur of part of the damages as an alternative to ordering a new trial on the issue of damages only. On appeal, Swift challenges the district court's memorandum decision denying a new trial on the issues relating to the special verdict and the jury instructions. Munns and his wife, Elaine Munns, (hereinafter "Munns") cross-appeal from the district court's decision to grant a remittitur reducing the damage award and denying some of Munns' claimed costs. For the reasons stated below, we reverse the order denying a new trial and we remand the case for a new trial on the questions of both liability and damages.

## I. FACTS AND PROCEDURAL BACKGROUND

Munns was traveling southbound on Highway 20 from Rexburg to Idaho Falls in the early morning hours of October 10, 1997, when he collided with a dead horse on the highway. Although Munns was familiar with the road, he failed to see the dead horse in the road because of the dark, rainy conditions. Munns' vehicle struck the horse, flipped onto its roof and slid down the road in an upside down position. Munns suffered an L 4 compression fracture of his spine and had to be extricated from the car by emergency personnel.

The owners of the horse, Wade and Linda Zollinger, had delivered the animal to Tadd and Tamara Jenkins as a replacement for another horse that belonged to the Jenkins and had just recently died. Tadd Jenkins' father, Tim Jenkins, arranged for Zollinger to deliver the horse to a pasture at the Jenkins facility. After the horse was delivered by Zollinger, Tim Jenkins checked on the horses in the pasture and secured the pasture's two gates. During the night of October 10, 1997, however, three horses got out of the pasture, and the Zollinger horse was hit and killed by a semi-truck driven by a Swift Transportation Co., Inc., employee. The driver reported the accident but left the horse on the roadway. Tim Jenkins testified that when he returned to check the gates after learning of the accident, it was obvious to him that someone had undone the wires holding one of the gates shut, allowing the gate to open and the horses to escape.

Munns, joined by their insurer, Farm Bureau Mutual Ins. Co., brought suit against Swift Transportation Co., Inc., the Zollingers, and Tadd and Tamara Jenkins, seeking damages for injuries suffered in the accident. The district court dismissed the Zollingers on their summary judgment motion, and the case went to trial against the remaining defendants. The jury completed a special verdict form, assessing liability in the following proportions: 10% to Glenn Munns, 80% to Swift Transportation Co., Inc. and its driver, 0% to Tadd and Tamara Jenkins and 10% to Tim Jenkins. Although Tim Jenkins was not a named party in the suit, the jury determined that he held some responsibility to Munns, for his part in securing the gate to the pasture.

The jury awarded damages to Munns and to Farm Bureau. Following the verdict, Swift Transportation Co., Inc., filed a motion for new trial pursuant to I.R.C.P. 59(a), asserting three separate grounds: (1) that the district court should have included an "unknown person" on the special verdict form for the jury to consider in apportioning fault; (2) that the district court should not have given the negligence *per se* instruction to the jury; and (3) that the damages awarded were excessive. The district court conditionally granted Swift Transportation Co., Inc., a new trial on the excessive damages issue as an alternative to a remittitur. Notwithstanding the district court's order partially in its favor, Swift appealed from the adverse rulings regarding the issues related to the special verdict form and to the *per se* instruction it claimed warranted a new trial. Munns cross-appealed, disputing the district court's reduction of the jury award by way of the remittitur and the denial of certain cost items.

## II. APPLICABLE STANDARDS

 A determination of the issues to be retried after the granting of a new trial is committed to the discretion of the trial court. *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977). On appeal, the Supreme Court will not reverse a trial court's order granting or denying a motion for new trial unless the court has manifestly abused

the wide discretion vested in it. While the Supreme Court must review the evidence, it is not in a position to "weigh" the evidence as is the trial court. *Jones v. Panhandle Distribs., Inc.*, 117 Idaho 750, 792 P.2d 315 (1990). In considering a motion for a new trial, the trial judge is not required to view the evidence in a light most favorable to the verdict winner. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). A new trial is the appropriate remedy when a jury verdict is based on incorrect instructions. *Walton v. Potlatch Corp.*, 116 Idaho 892, 781 P.2d 229 (1991).

## III. ISSUES

Swift asserts two errors in law made by the district court in ruling on the new trial motion. Swift argues that the jury was improperly instructed on the duty of a motorist involved in a collision between a single vehicle and an animal. Second, Swift maintains that the district court erred in not allowing the jury to consider the fault or negligence of unknown persons, who were excluded from the special verdict form.

## IV. ANALYSIS

We begin with a review of the relevant instructions provided to the jury. The district court gave an instruction on ordinary negligence (Jury Instruction 18), and an instruction stating the duty of every person to use ordinary care in conducting his or her activities (Jury Instruction 21). The district court also gave an instruction relating to accidents involving damage to a vehicle (Jury Instruction 31), which recited verbatim the words of I.C. § 49–1301(1). This instruction reads:

There was in force in the State of Idaho at the time of the occurrence in question a certain statute, which provided that:

The driver of any vehicle involved in an accident, either on public or private property open to the public, resulting in only damage to a vehicle which is driven or attended by a person shall immediately stop the vehicle at the scene of the accident, or as close as possible, and shall immediately return to, and in every

event shall remain at, the scene of the accident until he has fulfilled the requirements of law.

A violation of this statute is negligence, unless compliance with the statute was impossible or something over which the party had no control placed him in a position of violation of the statute or an emergency not of the party's own making caused him to fail to obey the statute.

Swift argues that the instruction based on I.C. § 49–1301(1) has no application to an accident between a vehicle and a horse. Swift contends that requiring a driver involved in an accident with an animal to remain indefinitely at the scene "until he has fulfilled the requirements of the law" was not within the contemplation of the legislature when it enacted the statute. According to Swift, Instruction 31, which is a negligence *per se* instruction, was improperly given to the jury.

■ Whether a statute provides a negligence *per se* circumstance has recently been addressed by this Court. To constitute negligence as a matter of law, the statute must (1) clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation of the terms of the statute must have been the proximate cause of the injury. *Ahles v. Tabor*, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001), *citing Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). In *Ahles*, we reversed the district court's finding of negligence *per se*, holding the standard of conduct described in the statute in question to be vague and requiring statutory interpretation to discern the intent of the statute, which was not subject to but one clear meaning. *Id.*

■ Idaho Code section 49–1301(1) directs the driver of any vehicle involved in an accident to immediately stop and to remain at the scene until he has fulfilled the requirements of law. The statute prescribes the duty owed by the drivers in an accident to each other, presumably to allow information

gathering concerning the accident. However, the statute qualifies "an accident" by limiting it to one "resulting in only damage to a vehicle which is driven or attended by a person." In the case before us, where the property damage caused by the accident was to the front bumper of Swift's truck and to a runaway horse, the applicability of the statute is not obvious. The inherent ambiguity in the statute precludes a conclusion that Swift Transportation Co., Inc., and its driver were negligent as a matter of law for violating the statute by not remaining at the scene of the accident with the horse. Moreover, a second, subsequent accident with the then dead horse was not the harm sought to be prevented by the statute. Thus, because the four-part test of *Sanchez v. Galey* has not been met, we conclude that I.C. § 49–1301(1) cannot be held to define conduct that would give rise to negligence *per se* under the facts of this case. We hold that Instruction 31 should not have been given to the jury.

■ Next, we examine whether the instruction was harmless error. Only where the instruction misleads the jury or prejudices a party is the giving of an instruction reversible error. *Student Loan Fund of Idaho, Inc. v. Duerner*, 131 Idaho 45, 951 P.2d 1272 (1997). When a jury verdict is rendered on the basis of incorrect instructions, the appropriate remedy is the granting of a new trial. *Walton v. Potlatch Corp., supra.*

In *DeGraff v.Wight*, 130 Idaho 577, 944 P.2d 712 (1997), the giving of an instruction containing an erroneous statement of the law regarding an owner or occupier's duty to a trespasser was held to be reversible error sufficient to justify vacating the verdict and remanding for a new trial. *Id.* at 580, 944 P.2d at 715. The Court in *DeGraff* relied upon *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985), where the Court held that the erroneous statement of law was not cured by the other instructions and that "[i]t [was] entirely too plausible that the jury may have reached its verdict based on or guided by the erroneous instructions." *Id.* at 991, 695 P.2d at 376.

The special verdict form in the present case required the jury to decide the extent, if any, of Swift's negligence. The terms of the special verdict, however, did not ask the jury to specify whether it was ordinary negligence or negligence *per se*. The effect of the erroneous instruction on the jury cannot be measured, but it is conceivable that the jury determined that Swift's conduct failed to comply with I.C. § 49–1301(1) and was, therefore, *per se* negligent. Applying the reasoning from *Salinas, supra*, we hold that the error in the instructions, which may have misled the jury and prejudiced Swift, was not harmless. Swift is entitled to a new trial due to the erroneous instruction.

Our disposition of the case renders it unnecessary to decide the remainder of the issues raised in the appeal and cross-appeal. Because the district court at the new trial may again be requested to include unknown persons on the special verdict form, however, we will discuss that issue to provide guidance in further proceedings.

The question of whether to include additional parties on the verdict form is resolved not by inquiring whether a judgment would or could be rendered against that person, but whether his conduct or his product caused or contributed to the accident and injuries. *Vannoy v. Uniroyal Tire Co.,* 111 Idaho 536, 726 P.2d 648 (1986). In the case before the Court, Tim Jenkins, who was not a named party, was listed on the special verdict form for the jury to consider as having caused or contributed to the accident. Swift argues that in a similar fashion, consideration of the fault of an unknown party responsible for opening the gate to the pasture should have been put before the jury. Swift contends that because there was evidence presented at trial to show that the conduct of an unnamed, unknown party may have allowed the gate to open, the jury should have decided the negligence and comparative fault of that party.

The evidence concerning the possible involvement of other, unknown parties came in through the testimony of Tim Jenkins. He testified that: "Some person had to have opened the gate because it's impossible for a horse to have done that." He testified that he had checked the pasture after the accident and found the gate laid open in such a way that only a person could have done it. He did not report seeing footprints or any evidence that persons had been in that vicinity, nor did he give any indication as to when the gate had last been checked prior to the horse's escape. Tim Jenkins' opinion testimony was not refuted by other evidence.

At the close of the evidence, the district court concluded that Jenkins' suggestion of the involvement of unknown parties was too speculative and the court refused to instruct the jury on the possible liability of unknown parties. Swift duly objected to the court's decision. Later, during its deliberations, the jury submitted a question to the court, asking about the possibility of assigning negligence to an unnamed party who might have opened the pasture gate. The court instructed the jury to consider only the parties named in the special verdict form.

We are of the view that if the same or closely similar evidence is submitted on retrial, the jury should be allowed to consider the possibility of the circumstances asserted by Jenkins when the jury apportions fault among all tortfeasors guilty of causal negligence whether named as a party or not.

## V. CONCLUSION

The order denying Swift's motion for a new trial due to erroneous instructions is reversed. The case is remanded for a new trial on the questions of liability and damages.

Costs on appeal are awarded to the appellant, Swift Transportation Co., Inc. No attorney fees are awarded.

Justices SCHROEDER, KIDWELL and EISMANN concur.

Chief Justice TROUT concurs in the result.