105 P.3d 676

**Shannon GUNTER, a married woman d/b/a Murphy's Lounge, Plaintiff–Respondent,**

v.

**MURPHY'S LOUNGE, LLC., an Idaho Limited Liability Company; Mountain West Ventures, LLC, a Colorado Limited Liability Company; Beverly J. Bergman and Wendel R. Bergman, husband and wife, Defendants–Appellants.**

**No. 29721.**

Supreme Court of Idaho, Lewiston, October 2004 Term.

Jan. 14, 2005.

Law Offices of Janet Jenkins, Sandpoint, for appellants. Janet E. Jenkins argued.

Powell & Reed, Sandpoint, for respondent. Todd M. Reed argued.

BURDICK, Justice.

This case arises from the termination of two commercial leases. The Plaintiff/Respondent, Shannon Gunter (Gunter) leased Murphy's Lounge from Defendant/Appellant, Mountain West Ventures, LLC, and leased the liquor license from Defendant/Appellant, Murphy's Lounge, LLC. When the managing member of each LLC attempted to terminate the lease Gunter brought suit. A jury awarded Gunter compensatory and punitive damages. We affirm all judgments, except the $18,000 compensatory damage award against Beverly Bergman and the award of attorney fees and costs against Beverly and Wendel Bergman.

## FACTS AND PROCEDURAL HISTORY

Gunter signed two written leases. The first one, entitled "Lease Agreement," was with Mountain West Ventures, LLC, (Mountain West) and Murphy's Lounge, LLC (Murphy's Lounge). Under the Lease Agreement, Mountain West leased to Gunter the real property in which the business was operated and Murphy's Lounge leased to Gunter the business and certain personal property used in connection with the business. The second lease was entitled "Liquor License Lease." Under it, Murphy's Lounge leased the liquor license to Gunter. The defendant Wendel Bergman (Wendel) executed the Lease Agreement as an agent for Mountain West, and the defendant Beverly Bergman (Beverly) executed both leases as an agent for Murphy's Lounge. Wendel owned 60% of Mountain West, and Beverly owned the remaining 40%. She was also the sole owner of Murphy's Lounge. The lease period began January 1, 2002, and ended December 1, 2004.

The Murphy's Lounge lease agreement required Gunter to obtain and maintain reasonable fire and public liability insurance, including liquor liability insurance in a form and amount, and with a company, acceptable to Mountain West Ventures, LLC and Murphy's Lounge, LLC. The liquor license lease required Gunter to obtain and maintain reasonable and adequate liquor liability insurance with a company acceptable to Murphy's Lounge, LLC.

Gunter contacted her insurance agent Ladonna Roberts with Dickinson Insurance in December 2001. Roberts testified that Big Sky Underwriting was the only company willing to quote the policy because of the fire classification and Gunter being a new business owner. Roberts submitted the quote for a million-dollar liquor liability policy. Because Gunter no longer wanted to be the middleman between the insurance agency and the Bergmans, Roberts spoke directly with Wendel. The underwriters would not bind the policy for a million-dollar liquor liability, but instead bound the policy for $100,000. In addition to other coverage, Gunter carried a million-dollar general liability insurance policy. Roberts testified she mailed Mountain West notification of the change in coverage on the liquor liability policy in February 2002.

During the first few months of the lease, the Bergmans had amusement video machines in Murphy's Lounge. Gunter and the Bergmans would equally share the profits earned from the machines. The Bergmans

instructed Gunter how to handle issuing the credits on the machines to patrons to avoid violating the gambling laws. When a patron retired from playing for the day, the patron would tell a Murphy's Lounge employee how many credits were left on the machine. The employee would write down the name and the credit amount. Two days later, the credits were returned to the patron in a white envelope. Only patrons that Gunter knew were paid back their credits; if an unknown patron asked if they paid out on their machines, Gunter would state the machines were for amusement purposes only. Beverly played on the machines and received her credits earned on the machines. In June 2002, Gunter unplugged the machines. In August 2002, the Bergmans removed the machines from Murphy's Lounge.

According to Gunter the relationship immediately began to deteriorate during the first months of the lease. Initially Wendel would consistently ask Gunter to stay and have drinks with him after her shift. Gunter would always decline. In March or April Wendel began to direct sexual innuendos towards Gunter. Wendel would comment on Gunter's clothing. For example, he would ask Gunter to wear a particular red shirt on a schedule so he could watch her do the dishes in the shirt. On another occasion he commented suggestively on the way Gunter ate an egg roll. On the same day he asked Gunter to take a ride with him in his "Hope Whoremobile." In July 2002, Wendel sent a business letter to Gunter wherein he wrote, "As mummy once said, 'A man who asks a woman for sex may get his face slapped. On the other hand, he might also get it.' " The comments made Gunter uncomfortable because of their business relationship and she felt he was in a position of power over her.

On May 7, 2002, the Defendants sent a letter to Gunter advising her that a patron had been over-served and that immediately after leaving the bar was involved in a serious injury accident resulting in a DUI citation. The letter warned Gunter that "[a]ny occurrence of intoxicated patrons leaving the premises and being involved in any accident or patrons engaging in fights or assaults on or near the premises will be grounds for termination of the Lease Agreements for Murphy's."

On June 8, 2002, Justin Jahn was the bartender on duty at Murphy's Lounge. The Bergmans were present and were talking with two other patrons, Mike and Angie. Wendel communicated to Jahn that he wanted to purchase a round of drinks. Jahn informed Wendel that Angie had had enough. Jahn did not give Angie any more drinks. Jahn believed Wendel slid his wine that he had ordered earlier over to Angie. Later, Angie fell and injured herself. The Bergmans took her to the hospital.

A few days later, on June 12, 2002, the Defendants sent a second letter to Gunter terminating the lease agreements effective July 15, 2002. The letter provided that "[o]n Saturday June 8, 2002 an obviously intoxicated patron was again over-served, resulting in an on-premises injury to the patron requiring emergency medical treatment." The obviously intoxicated person referred to in the letter was Angie.

On July 12, 2002, Gunter filed a complaint and demand for jury trial. Gunter alleged two claims in her complaint, breach of contract and tortious interference with contract. Defendants denied the allegations and counterclaimed for breach of contract, including violation of State liquor laws and inadequate insurance.

On July 15, 2002, the district court issued a temporary restraining order and notice of hearing for preliminary injunction. The hearing for a preliminary injunction was held on July 29, 2002. The Defendants' attorney did not appear and the district court granted the preliminary injunction, prohibiting the Defendants from proceeding to default or terminating the leases. On the same day Gunter presented a motion for reduction of bond, which was granted.

The following day, on July 30, 2002, the Defendants filed a motion to cancel the order on temporary injunction and bond. The district court denied the motion to cancel the preliminary injunction, but did modify the bond. The district court acknowledged that the Defendants were not given adequate no-

tice regarding the bond issues for the July 29 hearing.

On October 11, 2002, Gunter filed a motion for clarification of the restraining order, seeking an additional restriction prohibiting the Defendants from entering Murphy's Lounge. On November 14, 2002, the court heard argument and added additional terms to the injunction. The Bergmans were still allowed to enter the premises, but were restrained from talking to Gunter, to any patron or to any employee while on the premises at Murphy's Lounge. Furthermore, they were restrained from engaging in any disruptive conduct of any sort while on the premises.

Approximately two weeks before trial, Gunter motioned the court for a continuance. Defendants alleged prejudice and requested that Gunter be required to carry additional insurance. The district court continued the trial to April and denied Defendants' request for additional insurance.

The Defendants moved for summary judgment. The day before the hearing Gunter requested a continuance because the birth of her attorney's baby. The district court continued the hearing although the Defendants argued they would be prejudiced by the continuance. The district court later denied the summary judgment motion.

Five days before trial the district court allowed the Defendants to amend their counterclaim. The Defendants asserted two new theories for their breach of contract claim. They contend Gunter breached the contract by failing to pay the utilities and sales tax associated with Murphy's Lounge operations.

After a five-day trial the jury returned a verdict in Gunter's favor. The jury awarded compensatory damages totaling $36,000 ($18,000 for each claim) and punitive damages totaling $75,000. Upon motion for new trial by the Defendants, the district court offered Gunter a choice to reduce the compensatory damages to $18,000 or have a new trial. Gunter agreed to the reduced award. The district court awarded attorney fees to Gunter pursuant to I.C. § 12–120(3). A judgment was entered against all four Defendants holding each to be jointly and severally liable for the compensatory and punitive damages and attorney fees and costs. The Defendants filed a timely appeal.

## ISSUES

I. Did the district court properly grant pretrial motions?

II. Did the district court properly deny Defendants' motion for directed verdict?

III. Did the court properly instruct the jury?

IV. Did the court properly deny the motion for a new trial?

V. Were Defendants denied a fair trial due to cumulative error?

VI. Did the district court properly grant attorney fees?

VII. Should either party be awarded attorney fees on appeal?

## ANALYSIS

### I. DID THE DISTRICT COURT PROPERLY GRANT PRETRIAL MOTIONS?

#### A. *Standard of Review*

 This Court reviews the following pretrial motions for a manifest abuse of discretion. To determine whether the trial court committed an abuse of discretion, this Court "must determine (1) whether the trial court correctly perceived the issue of one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion, consistently with applicable legal standards; and (3) whether the trial court reached its decision by exercise of reason." *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997) (quoting *Lankford v. Nicholson Mfg. Co.*, 126 Idaho 187, 188–89, 879 P.2d 1120, 1121–22 (1994)).

#### B. *Preliminary Injunction*

 The Defendants raise issues concerning the granting, modification or clarification of the preliminary injunction. This Court reviews the trial court's decision to grant or deny a preliminary injunction for a manifest abuse of discretion. *Brady v. City of Homedale*, 130 Idaho at 572, 944 P.2d at

707. However we decline review of the preliminary injunction because it has been superceded by a subsequent final appealable order. *See Farner v. Idaho Falls School Dist. No. 91,* 135 Idaho 337, 342, 17 P.3d 281, 286 (2000). The issue is now moot since the Defendants were allowed to reoccupy the premises on May 25, 2003, and the preliminary injunction has been dismissed.

### C. *Recusal*

■ On appeal, Defendants argue that the judge had an affirmative duty to disqualify himself, although they did not make a motion to disqualify him. Defendants argue while the judge was in private practice with his father, his father was sued by an unrelated party for malpractice involving the Dram Shop Act. This along with the prejudicial rulings demonstrate that the district court judge's impartiality is reasonably questioned.

■ "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." CODE OF JUDICIAL CONDUCT Canon 3(E)(1). The decision to disqualify is left to the sound discretion of the trial judge himself. *Sivak v. State,* 112 Idaho 197, 206, 731 P.2d 192, 201 (1986). The fact a judge is acquainted with a person or a family member that has been sued, by itself, is an insufficient basis to demonstrate that the judge's impartiality should be questioned. The Court concludes Judge Mitchell did not abuse his discretion in hearing this case and the argument is frivolous.

### D. *Continuance*

#### 1. *Trial Continuance*

■ Gunter's attorney requested a continuance of the trial because his supervisor at Boundary County Prosecuting Attorney's Office had resigned. With only one other attorney in the office—whose primary responsibility required him to handle civil matters—Gunter's attorney had a conflict with three scheduled felony criminal trials. The Defendants opposed the continuance arguing the postponement created too great of risk for the Defendants because Gunter's under-insurance and limited coverage. The parties also informed the court that Wendel previously misrepresented to the court the amount of coverage he carried on Murphy's Lounge six months prior to the leases. Defendants requested that if the court granted the continuance the Defendants purchase the additional insurance and charge it to Gunter as damages. After reviewing the lease the district court granted the continuance and denied Defendants request for the additional insurance coverage.

■ On appeal, Defendants argue that the district court erred in continuing the trial and denying the additional insurance coverage. A decision to grant or deny a motion for continuance is vested in the sound discretion of the trial court. *State v. Ward,* 98 Idaho 571, 574, 569 P.2d 916, 919 (1977). The district court recognized this issue as one of discretion, ruled within the outer boundaries of the discretion, using applicable legal standards, and with the exercise of reason. The decision to grant the continuance and deny the additional relief was not an abuse of discretion.

#### 2. *Summary Judgment Continuance*

■ Defendants moved for summary judgment. After receipt of the motion, Gunter's counsel communicated with Defendants' counsel and informed her that his wife was expecting a baby any day. During the time Gunter should have responded, counsel's son was born, and additionally counsel was preoccupied with another case. Gunter requested from the Defendants additional time to respond to the motion. Defendants would not agree. Having been unable to reach an agreement, Gunter moved the court to continue the summary judgment hearing.

Defendants opposed the motion arguing they would be prejudiced by the continuance because it would impinge on their expert's ability to participate in the case. Furthermore, they were delaying their expert's preparation of the case until after the results of the summary judgment hearing. The delayed hearing, the Defendants argued, might increase their legal fees due to possible unnecessary trial preparation if the summary judgment motion was successful.

The district court expressed its displeasure in the delayed request for a continuance. However, the reasons stated in counsel's affidavit, coupled with the fact counsel was not requesting that the trial date be continued, convinced the court a short continuance was warranted.

On appeal, Defendants argue error in continuing the summary judgment hearing. Upon review, the district court recognized this issue as one of discretion, ruled within the outer boundaries of the discretion, using applicable legal standards, and with the exercise of reason. The decision to grant the continuance was not an abuse of discretion.

### E. *Motion in Limine*

#### 1. *Defendants' Motion Regarding Sexual Innuendos.*

Defendants motioned the court to prohibit Gunter from presenting evidence regarding sexual innuendos made by Wendel. The Defendants argued the evidence would unnecessarily inflame the jury and confuse them as to the real issues. The Defendants also contended that because the conduct was isolated to one or two incidents it did not create a pattern. Furthermore, the information was irrelevant to the issues before the court. Gunter countered arguing that the conduct was relevant because a jury could determine that Gunter's rejection of Wendel was the motivating factor for terminating the lease. The district court denied the motion, but required that the issue be readdressed at trial outside the presence of the jury before counsel solicited questions on these lines. The district court recognized that sexual comments or harassment could be part of Gunter's tortious interference claim.

On appeal, the Defendants argue the district court erred in not granting their motion in limine. The Defendants do not, however, argue that the district court improperly allowed Gunter to testify about the sexual innuendos. Furthermore, Defendants are the ones who admitted the letter into evidence wherein Wendel wrote, "mummy once said, 'A man who asks a woman for sex may get his face slapped. On the other hand he might also get it.' "

Trial courts have broad discretion when ruling on a motion in limine. *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 767, 86 P.3d 475, 481 (2004). This Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard. *Id.* at 768, 86 P.3d at 482. The trial court may deny the motion and wait until trial to determine if the evidence should be admitted or excluded. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 492, 943 P.2d 912, 918 (1997). If the trial court defers a ruling on the motion a party must reassert an objection at the time of the offer in order to preserve the issue. *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988). "However, evidentiary rulings involving relevancy are not discretionary matters, and as such, are reviewed *de novo* on appeal." *Loza v. Arroyo Dairy*, 137 Idaho 764, 766, 53 P.3d 347, 349 (Ct.App.2002).

We find that the district court's ruling on the motion in limine was to decide the issue at a later time. Since the Defendants did not object at the time the evidence was being presented to the jury, the Defendants have waived the issue on appeal.

Additionally, the sexual innuendo evidence was properly submitted to the jury. The evidence supported Gunter's theories regarding why the Defendants were attempting to terminate the leases. The evidence was relevant and properly admitted.

#### 2. *Gunter's Motion Regarding DUI convictions*

Gunter motioned the court to preclude evidence regarding her husband's and her chief bartender's DUI convictions. Defendants opposed the motion arguing that the information is relevant and supported an inference of lack of good judgment regarding over service of alcohol to patrons. The district court denied the motion. The court concluded the evidence should be precluded because the prior DUI conviction was not probative on any issue.

We agree with the district court. The prior DUI convictions of the husband and bartender did not have probative value regarding whether the bartender or the plain-

tiff's husband used poor judgment in serving patrons is therefore irrelevant. The motion in limine was properly granted.

### F. Sanctions

■ Defendants moved for sanctions for Gunter's discovery violations pursuant to Rule 37(b). Defendants contend that Gunter prejudiced their case by failing to provide bank statements and sales tax information in a timely manner. After hearing testimony the district court denied the requested sanctions stating, "the area can be gone into in the examination of the Gunters [sic] and as to who had what and when, and certainly the jury can be made aware—if the videotape deposition doesn't have a date, the Court will instruct the jury as to when the deposition took place[.]" Defendants argue that the district court erred in failing to sanction Gunter.

The district court allowed the Defendants to be cross-examined on when the information had been provided, normally an irrelevant issue. This allowed the Defendants to argue or infer that Gunter had something to hide by not providing the information in a timely manner. The admission of that timing evidence was itself a sanction. The district court did not abuse its discretion in denying other sanctions. The court acted within the boundaries of its discretion, consistent with applicable legal standards, and reached its decision by exercise of reason.

### G. Summary Judgment

■ Defendants argue that the district court erred in denying their summary judgment motion on the claim of tortious interference with a contract claim because there were no allegations the Bergmans acted outside the scope of their business capacities. Furthermore, pursuant to *Ostrander v. Farm Bureau,* 123 Idaho 650, 851 P.2d 946 (1993), a party cannot tortiously interfere with its own contract and thus the court erred in denying summary judgment.

■ An order denying summary judgment after a jury trial is non-reviewable. *Watson v. Idaho Falls Consolidated Hospitals, Inc.,* 111 Idaho 44, 46, 720 P.2d 632, 634 (1986); *Herrick v. Leuzinger,* 127 Idaho 293, 305, 900 P.2d 201, 213 (Ct.App.1995); *Keeler v. Keeler,* 124 Idaho 407, 410, 860 P.2d 23, 26 (Ct.App.1993); *Evans v. Jensen,* 103 Idaho 937, 655 P.2d 454 (Ct.App.1982). The *Keeler* Court explained the rational behind the rule:

> [B]y entering an order denying summary judgment, the trial court merely indicates that the matter should proceed to trial on its merits. The final judgment in a case can be tested upon the record made at trial, not the record made at the time summary judgment was denied. Any legal rulings made by the trial court affecting that final judgment can be reviewed at that time in light of the full record. This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary judgment to view the relative strengths and weaknesses of the litigants at that earlier state. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on the interlocutory motion.

*Keeler,* 124 Idaho at 410, 860 P.2d at 26 (quoting *Evans v. Jensen,* 103 Idaho 937, 941–42, 655 P.2d 454, 458–59 (Ct.App.1982)).

We decline review of the trial court's decision to deny summary judgment. It would be unjust to allow appellate reconsideration of the motion when a jury has made a determination of the case on the merits.

## II. DID THE DISTRICT COURT PROPERLY DENY DEFENDANTS' MOTION FOR DIRECTED VERDICT?

The Defendants argue the district court erred in denying a directed verdict pursuant to I.R.C.P. 50(a). They contend there was no evidence regarding Gunter's future lost profits. Gunter counters that there was testimony she took home between six and twelve hundred dollars each month, and there were eighteen months left on the lease. The district court denied the motion, stating: "I think there is evidence given the fact that that's the relief sought by the Bergmans is to terminate the lease."

### A. Standard of Review

In reviewing a decision to grant or deny a motion for a directed verdict or a judgment notwithstanding the verdict, this Court applies the same standard as that applied by the trial court when originally ruling on the motion. *Powers v. American Honda Motor, Co., Inc.*, 139 Idaho 333, 335, 79 P.3d 154, 156 (2003). This Court conducts an independent review of the evidence and we do not defer to the trial court's findings. *Gillingham Const., Inc. v. Newby–Wiggins Const., Inc.*, 136 Idaho 887, 891, 42 P.3d 680, 684 (2002). This Court must determine whether, admitting the truth of the adverse evidence and drawing every legitimate inference most favorably to the opposing party, there exists substantial evidence to justify submitting the case to the jury. *General Auto Parts, Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 855, 979 P.2d 1207, 1213 (1999) (quoting *Herrick v. Leuzinger*, 127 Idaho 293, 297, 900 P.2d 201, 205 (Ct.App. 1995)). "The 'substantial evidence' test does not require the evidence be uncontradicted. It requires only that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper." *Id.* (quoting *All v. Smith's Management Corp.*, 109 Idaho 479, 480, 708 P.2d 884, 885 (1985)). The moving party will prevail only if the evidence presented is so clear that all reasonable minds could reach only one conclusion. *Student Loan Fund of Idaho v. Duerner*, 131 Idaho 45, 51, 951 P.2d 1272, 1278 (1997). On appeal after a jury verdict, this Court reviews the entire record not just the evidence presented in the case-in-chief. *Id.*

### B. The District Court Properly Denied the Motion for a Directed Verdict

The focus of our inquiry is limited to determining if there was evidence regarding Gunter's future lost profits. Gunter testified that she would draw six to twelve hundred dollars from the business each month, and that there remained eighteen months on the lease. Gunter also testified that she thought she would be taking out more money in the last twelve months because the money she put into the business would be paid off.

Contrary to Defendants' position on appeal, the evidence reveals that during Defendants' cross-examination Gunter demonstrated she would incur some lost profits. Gunter testified that her profit and loss statement for December 1, 2001 through November 2002 totaled $2,873.48, for December 1 through June 25 it totaled $1,814, for June 2002 through August 2002 it totaled $3,914.88, and for January 1 through March 27 it totaled $328.15. In analyzing this information, it appears from January 2002 through March 31, 2003, Gunter made approximately $3,201.15, not including any profits or loss for December. In April 2003, Plaintiff paid $2,139.52 in delinquent sales tax. The net profit would have been $1,061.63.

Viewing the facts in the light most favorable to Gunter, there existed substantial evidence that Gunter would suffer future lost profits. The district court did not error in denying the motion for a directed verdict and submitting the case to the jury.

### III. DID THE COURT PROPERLY INSTRUCT THE JURY

#### A. Standard of Review

This Court exercises free review when determining whether the district court properly instructed the jury. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). On review this Court asks whether the instructions, as a whole, fairly and adequately present the issues and state the law. *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004). Even when the jury instructions are factually or legally inaccurate, this Court will not reverse the district court unless the instructions mislead the jury or prejudice the complaining party. *Id.*

#### B. Tortious Interference with Contract Claim Instruction

Defendants argue the district court erred in giving jury instruction number 10. Defendants contend that the instruction was improper as to Beverly because Gunter did

not allege in the pleadings, and the evidence does not support, the claim that Beverly did anything outside her capacity as an agent of the LLC.

In her amended complaint, Gunter alleged that Wendel had tortiously interfered with both leases.[1] The district court instructed the jury only with respect to tortious interference with the Liquor License Lease. In doing so, it instructed the jury that Wendel, Beverly, and Mountain West could each be found liable for tortious interference with the Liquor License Lease.[2] The special verdict form also asked the jury to find separately whether or not each of these three Defendants had tortiously interfered with the contract, and the jury found that each of them had.[3] Beverly and Mountain West objected to being included in the claim for tortious interference with contract because that claim had not been pled against them. The district court ruled that because the first paragraph

---

1. In Count II of her Amended Complaint, Gunter alleged:

**COUNT TWO—TORTUOUS [SIC] INTERFERENCE WITH CONTRACT**

XIX.

Plaintiff re-alleges and affirms the allegations contained in Paragraphs I through XVIII as set forth herein.

XX.

From November 12, 2001 until current, there has been a contract in existence between Plaintiff and Defendant Murphy's Lounge, LLC, for a liquor license lease. Additionally between the same dates and times, there has been a contact in existence between Plaintiff, Shannon Gunter, and Defendant, Mountain West Ventures, LLC.

XXI.

At all times since the creation of the contract and to today's date, Defendant Wendell [sic] R. Bergman has been aware of the contracts.

XXII.

During the course of the contract's existence, and specifically after Murphy's Lounge began to be more profitable, Defendant Wendell [sic] R. Bergman has intentionally interfered with the contract causing a breach of the contract. Said interference has taken the course of the following: Murphy's Lounge, LLC, and Mountain West Ventures, LLC, notified Plaintiff that if anyone was over served, they would terminate the lease agreement. On or about June 8, 2002, Defendant Wendell [sic] R. Bergman intentionally provided alcohol to an individual who he knew was intoxicated and had been "cut off" from further service by an agent of the Plaintiff. Defendant Murphy's Lounge, LLC, and Defendant Mountain West Ventures, LLC, have utilized this action as the primary reason for termination of the leasehold and the lease for the liquor license. Said actions of Defendant Wendell [sic] R. Bergman have caused damage to Plaintiff by eliminating chances for future profits and business name as well as damages already incurred.

XXIII.

Defendant Wendell [sic] R. Bergman's actions of tortuous [sic] interference with contract has caused Plaintiff to retain an attorney. Plaintiff requests attorney's fees and costs in this particular matter.

XXIV.

The actions of Defendant Wendell [sic] R. Bergman in tortuously [sic] interfering with the contract by providing alcohol to an individual and thus utilizing through his capacity as a member of Mountain West Ventures, LLC, and Murphy's Lounge, LLC, to subsequently terminate the lease is an act that is so egregious, wanton, willful, and intentionally damaging to Plaintiff's economic income that Plaintiff requests punitive damages be awarded in an amount to be determined by the jury.

2. Instruction No. 10 given by the district court stated as follows:

The plaintiff has the burden of proving each of the following propositions for the intentional interference with contract:

1. That a contract existed between the plaintiff and Defendant Murphy's Lounge, LLC.

2. That the Defendant Wendel R. Bergman, Defendant Mountain West Ventures, LLC, and Defendant Beverly J. Bergman knew of the existence of this contract.

3. That the Defendant Wendel R. Bergman and/or Defendant Mountain West Ventures, LLC, and/or Defendant Beverly J. Bergman acted in a manner in which to cause and/or induce Defendant Murphy's Lounge, LLC, to cancel the liquor license contract with Plaintiff.

3. The relevant portion of the special verdict is as follows:

QUESTION NO. 4: Did Defendant, Wendel R. Bergman, tortiously interfere with the contract between Shannon Gunter and Murphy's Lounge, LLC?
ANSWER: Yes X No _____

QUESTION NO. 5: Did Defendant, Beverly Bergman, tortiously interfere with the contract between Shannon Gunter and Murphy's Lounge, LLC?
ANSWER: Yes X No _____

QUESTION NO. 6: Did Mountain West Ventures, LLC, tortiously interfere with the contract between Shannon Gunter and Murphy's Lounge, LLC?
ANSWER: Yes X No _____

of the claim re-alleged all of the complaint's preceding paragraphs, which did refer to Beverly and Mountain West, they were also included as defendants in the claim for tortious interference with contract. In so ruling, the district court erred.

A fair reading of Count Two of the Amended Complaint does not suggest that Gunter was asserting a claim against either Beverly or Mountain West for tortious interference with contract. The claim stated: "Defendant Wendell [sic] R. Bergman has intentionally interfered with the contract"; "Said actions of Defendant Wendell [sic] R. Bergman have caused damage to Plaintiff ..."; "Defendant Wendell [sic] R. Bergman's actions of tortuous [sic] interference with contract has caused Plaintiff to retain an attorney"; and "The actions of Defendant Wendell [sic] R. Bergman in tortuously [sic] interfering with the contract ... is an act that is so egregious, wanton, willful, and intentionally damaging to Plaintiff's economic income that Plaintiff requests punitive damages be awarded in an amount to be determined by the jury." The Amended Complaint did not allege a claim against either Beverly or Mountain West for tortious interference with contract, nor is there any contention that such claim was tried with the express or implied consent of the parties.

The judgment against Beverly must be reversed. She is not liable for breach of contract because she was not a party to either of the contracts with Gunter. She cannot be liable for tortious interference with contract because that claim was not pled against her and it was not tried with the express or implied consent of the parties.

 With respect to Mountain West, the judgment does not need to be modified. The jury awarded damages against it in the sum of $18,000 for breach of contract. The jury also awarded punitive damages against it in the sum of $75,000. Gunter alleged in her Amended Complaint that she should be awarded punitive damages on both her claim for breach of contract and her claim for tortious interference with contract. When instructing the jury, the district court did not limit punitive damages to the tortious interference claim. On appeal, Mountain West

does not contend that a claim for breach of contract cannot support an award of punitive damages. In appropriate cases, it can. *Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 95 P.3d 977 (2004). Therefore, there is no basis for altering the damage award against Mountain West.

## C. *Punitive Damages*

 Defendants argue that the district court erred in instructing the jury on punitive damages. They claim the evidence did not rise to the necessary level to merit such an award. Furthermore, they contend the punitive damages awarded were out of proportion to the compensatory damages. We review the trial court's decision to submit the issue of punitive damages to the jury for an abuse of discretion. *Rockefeller v. Grabow*, 136 Idaho 637, 647, 39 P.3d 577, 587 (2001). In applying the abuse of discretion standard we review the evidence to evaluate whether substantial evidence supports submitting the issue to the jury. *Id.* We determine whether there was sufficient evidence a jury could find that the Defendant acted with aggressive, fraudulent, malicious or outrageous conduct. *See* I.C. § 6–1604. Punitive damages are not favored in the law and should be awarded in only the most unusual and compelling circumstances. *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992). However, we do not review the award to determine if *we would* have awarded punitive damages, but instead whether the *jury could* have awarded punitive damages. *Rockefeller*, 136 Idaho at 647, 39 P.3d at 587.

The district court allowed Gunter to amend the complaint to include punitive damages. In its reasoning the district court determined the sexual innuendos allegedly made by Wendel provided the intersection between the wrongful act and the harmful state of mind.

 On review of the evidence, it is recognized that this case arises out of the acts committed by the Defendants after the parties' relationship had deteriorated, in part because of the sexual innuendos made by Wendel. The Defendants decided to terminate the leases prior to their expiration

based on circumstances they contrived. Wendel knew a patron had enough to drink and the bartender would not serve her any more, however he still chose to provide his drink to her. Then, each of the Bergmans wrote a letter to Gunter terminating the leases because the patron had been over-served.

On review, there was sufficient evidence a jury could find the Defendants acted in a manner that was malicious or outrageous. The district court was within its discretion to submit the punitive damages issue to the jury.

Defendants proposed the punitive damages instruction include language that would have required the jury to award punitive damages in an amount bearing some reasonable relation to the actual damages. Defendants' proposed instruction was substantially similar to the actual instruction given (instruction 16d) except that Defendants proposed the following language be included: "If you find such an additional award is necessary, the amount of the award must bear some reasonable relation to the plaintiff's actual damages, the cause thereof, the defendants' conduct, and the objective of deterring similar conduct." Defendants do not argue that the district court erred in not giving their instruction, but instead argue the punitive damages award was disproportionate and was excessive, which will be addressed in the section regarding whether the district court should have granted a new trial.

### D. Commenting on the Evidence

 Defendants argue that instruction 11c was an impermissible comment on the evidence. They contend that since they amended their counterclaim and it no longer contained an allegation that Gunter violated state gambling laws, the instructions should not have been given to the jury.

Here the jury was instructed by instruction 11c, as follows:

"You are instructed that throughout this litigation, Defendants Wendel R. Bergman and Beverly J. Bergman, husband and wife, Mountain West Ventures, LLC, and Murphy's Lounge, LLC, have maintained that Plaintiff, Shannon Gunter, violated the Idaho Liquor laws by gambling."

This instruction states Defendants withdrawn claim that Gunter violated the gambling laws. Defendants abandoned this claim before trial when they amended their counterclaim suit. The instruction does not set forth any relevant law or provide the jurors with any necessary legal instruction to guide their deliberation. *See, State v. Brown,* 131 Idaho 61, 71, 951 P.2d 1288, 1298 (Ct.App. 1998). It is an inappropriate comment on the evidence. However, "[t]he critical concern is whether or not the instructions mislead the jury or prejudice either party." *Warren v. Furniss,* 124 Idaho 554, 558, 861 P.2d 1219, 1223 (1993). The jurors heard testimony throughout the trial that the Defendants accused Gunter of violating the gambling laws and that that they could use it to terminate the lease. We conclude this instruction did not prejudice the Defendants nor did it mislead the jury.

### IV. DID THE COURT PROPERLY DENY THE MOTION FOR A NEW TRIAL?

 This Court reviews the decision to grant or deny a motion for a new trial under an abuse of discretion standard. *Warren v. Sharp,* 139 Idaho 599, 603, 83 P.3d 773, 777 (2003). On appeal the trial court's decision to grant or deny a new trial will not be disturbed absent a showing of manifest abuse. *Dyet v. McKinley,* 139 Idaho 526, 529, 81 P.3d 1236, 1239 (2003). This Court must review the evidence, but is not in the position to weigh the evidence as the trial court does. *Munns v. Swift Transp. Co., Inc.,* 138 Idaho 108, 110, 58 P.3d 92, 94 (2002). This Court's primary focus is on the process in which the trial court reached its conclusion, not the results of the trial court's decision. *Levinger v. Mercy Medical Center, Nampa,* 139 Idaho 192, 196, 75 P.3d 1202, 1206 (2003). Thus we must determine whether the trial court perceived the issue as one of discretion, acted within the outer boundaries of its discretion and consistent with legal standards, and made the decision with an exercise of reason. *Sun Valley*

*Shopping Center v. Idaho Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

The Defendants argue the district court erred in not granting a new trial. They contend the court gave the jury erroneous damage instructions that caused the jury to double-compensate Gunter for her injuries. The district court then granted a new trial, subject to whether Gunter would accept an $18,000 reduction in the compensatory award. It is the Defendants' contention that the court then erred by not granting a new trial for the award of punitive damages. In support of their motion Defendants rely on *Yacht Club Sales and Service, Inc. v. First Nat. Bank of North Idaho,* 101 Idaho 852, 864, 623 P.2d 464, 476 (1980). It is Defendants' position that, as a matter of law, when a compensatory damage award is reduced the court must grant a new trial to determine the award of punitive damages. We disagree.

 "When a litigant moves for a new trial as redress against an improper verdict, he subjects himself to the equitable powers of the trial court." *McCandless v.Kramer,* 76 Idaho 516, 519, 286 P.2d 334, 336 (1955). Our Court has held there can only be one award of damages for a single injury. *Id.* Furthermore, the trial court may reduce the judgment to a single recovery, if it believes the jury awarded a party twice for the same injury. *Id.*

The *Yacht Club Sales and Service* Court reversed the compensatory damage award and determined that it was necessary to reverse the punitive damage award because the two must bear some reasonable relationship. 101 Idaho at 864, 623 P.2d at 476. This Court "recognized that the phrase 'reasonable relationship' . . . is an imprecise one for measurement of punitive damages as against actual damages." *Id.* The Court then recognized that the main purpose in awarding punitive damages was to deter future similar conduct. *Id.* Our Court has said in evaluating punitive damages,

> To determine whether a punitive damage award is excessive, this Court must ascertain 'whether the punitive damage award appears to have been given under the influence of passion or prejudice.' 'Propor-

tionality is a factor to be considered in evaluating whether a punitive award is excessive.' However, this Court also must consider 'the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others.'

*Griff, Inc. v. Curry Bean Co., Inc.,* 138 Idaho 315, 322, 63 P.3d 441, 448 (2003) (internal citations omitted).

 In this case, the district court recognized the decision to grant a new trial was one of discretion. The court accepted briefing on the issue of double-damages, and prior to ruling on the matter reviewed the relevant rules and case law. The court determined the jury awarded double-damages for the same injury and granted a new trial subject to whether Gunter would accept the reduced award of $18,000. The judge then reasoned that the punitive damages were reasonable and that it did have a rational or reasonable relationship with the compensatory damages. The district court had given the exact Idaho Jury Instruction 921, which was appropriate. The district court concluded that the reduction in compensatory damages had no bearing on the punitive damages awarded by the jury.

The district court reasoned that the amount awarded by the jury was to deter the Defendants from future similar conduct. The district court found the award was not excessive or given under the influence of passion or prejudice. We affirm the district court's decision to deny a new trial on punitive damages. The district court recognized the decision was within his discretion. The district court acted within the boundaries of its discretion and consistent with legal standards. The district court exercised reason in making its decision and thus properly denied a new trial.

## V. WERE DEFENDANTS DENIED A FAIR TRIAL DUE TO CUMULATIVE ERROR

The Defendants argue the cumulative effect of the district court's erroneous rulings

deprived them of a fair trial. They assert that as a result the district court committed reversible error.

■ "The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the Defendant's constitutional right to due process." *State v. Sheahan,* 139 Idaho 267, 286, 77 P.3d 956, 976 (2003). Although cumulative error has never been formally adopted in civil litigation in Idaho, the errors in this case do not arise to that level. Therefore, we need not examine if that legal theory applies to civil cases in general.

## VI. DID THE DISTRICT COURT PROPERLY GRANT ATTORNEY FEES?

■ The Defendants argue the district court erred in awarding attorney fees to Gunter. The Bergmans concede that the court did the proper analysis, but assert it arrived at the wrong conclusion. The Defendants contend that the gravamen of the complaint rested in tort, not in contract. Furthermore, because the district court could not distinguish between the fees attributable to the contract or tort, no attorney fees should have been awarded.

■ Idaho Code § 12–120(3) authorizes the award of attorney fees to the prevailing party when the action is based on a commercial transaction. The statute defines commercial transactions as "all transactions except transactions for personal or household purposes."

> [T]he award of attorney fees is not warranted every time a commercial transaction is remotely connected with the case. Rather, the test is whether the commercial transaction comprises the gravamen of the lawsuit. Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover.

*Sowards v. Rathbun,* 134 Idaho 702, 708, 8 P.3d 1245, 1251 (2000) (quoting, *Brower v.*

*E.I. DuPont De Nemours & Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)).

In this case, the leases were properly categorized as commercial transactions. The commercial transactions were an integral part of each party's claim. Gunter claimed the Defendants wrongfully terminated the leases and the Defendants countered with an assertion of breach of contract. The gravamen of the lawsuit was the commercial transaction. Only Mountain West and Murphy's Lounge engaged in the commercial transaction with Gunter, however. Therefore the award of attorney fees should only be against those two Defendants.

## VII. SHOULD EITHER PARTY BE AWARDED ATTORNEY FEES ON APPEAL?

Both parties have requested attorney fees on appeal. Since the award of attorney fees below is be upheld pursuant to I.C. § 12–120(3) and Gunter is the prevailing party on appeal, Gunter is awarded attorney fees against Mountain West and Murphy's Lounge on appeal. *Miller v. St. Alphonsus Regional Medical Center,* 139 Idaho 825, 839, 87 P.3d 934, 948 (2004).

### CONCLUSION

The judgment for compensatory damages against Beverly is vacated. The judgment for compensatory damages against the other three Defendants is affirmed. The judgment for punitive damages against all four Defendants is affirmed. The attorney fees awarded by the district court are affirmed as to Mountain West and Murphy's Lounge. This Court awards attorney fees and costs on appeal pursuant to I.C. § 12–120(3) to Gunter as the prevailing party against Mountain West and Murphy's Lounge.

Chief Justice SCHROEDER and Justices TROUT, and KIDWELL [4] CONCUR.

Justice EISMANN, specially concurring in part and concurring in the result in part.

I concur in Part I, II, III, V, VI, and VII of the majority opinion.

4. Justice Kidwell voted to concur prior to his retirement on January 1, 2005.

## A. Punitive Damages

I concur in Part III. C. of the majority opinion regarding punitive damages. I write only to add an additional comment. The jury could have found, based upon the evidence, that Wendel made sexual advances towards Gunter and decided to retaliate when she rebuffed his advances. In order to retaliate, he, as the managing agent of Mountain West, wrongfully terminated its lease with Gunter and induced Murphy's Lounge to wrongfully terminate both of its leases with her. The jury could also have found under the evidence that Murphy's Lounge, through its managing agent Beverly, knew that there was no cause for the termination and that it was done wrongfully in retaliation for Gunter's rebuff of Wendel's sexual advances. Finally, the jury could have found that Wendel, Mountain West, and Murphy's Lounge acted with knowledge of the likely consequences of their conduct, which was the termination of Gunter's means of support. In summary, the jury could have found that the conduct of these defendants was an extreme deviation from standards of reasonable conduct done with knowledge of its likely effects, which supports an award of punitive damages. *Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 95 P.3d 977 (2004); *Linscott v. Rainier Nat'l Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980).

## B. Motion for a New Trial Because of Excessive Damages

I concur in the result in Part IV of the majority opinion. Gunter's complaint alleged two causes of action: breach of contract and tortious interference with contract. In the special verdict, the jury was instructed to award damages for each claim, and it awarded $18,000 for the breach of contract and $18,000 for the tortious interference with contract. The district court initially added those two sums together and entered judgment for $36,000 in compensatory damages plus the $75,000 in punitive damages, for a total of $111,000. The defendants then moved for a new trial alleging, among other things, that the jury had awarded excessive damages that appeared to have been given under the influence of passion or prejudice.

The district court found that "the jury awarded a double damage," and it conditionally ordered a new trial unless Gunter accepted a remittitur reducing the compensatory damages to $18,000, which she did. On appeal, the defendants argue that where the compensatory damages are cut in half, the award of punitive damages should also be vacated and retried. They rely upon *Yacht Club Sales and Service, Inc. v. First Nat'l Bank of North Idaho*, 101 Idaho 852, 623 P.2d 464 (1980), in which we held that reversal of the award of compensatory damages also required reversal of the award of punitive damages.

The defendants' argument, and the district court's action, is based upon a misunderstanding of the jury verdict. The jury did not award $36,000 in compensatory damages. Gunter sought to recover the identical damages under two theories of recovery. The jury was instructed that the damages recoverable under each theory were the same. On the breach of contract claim, the district court instructed the jury that it could award as damages "[t]he amount of Shannon Gunter's lost income for the remainder of the lease term." On the tortious interference claim, the district court instructed the jury that it could award as damages "[t]he amount of Shannon Gunter's lost income for the remainder of the lease term." The district court directed the jury to award damages under each theory. Since the district court instructed the jury that the measure of damages under each theory was the same, not surprisingly the jury awarded identical damages under each theory. Its calculation of Gunter's lost income was the same under both theories of recovery. There is nothing indicating that the jury thought it was awarding a total of $36,000 in damages, however. It was simply twice asked to calculate Gunter's lost income, once under each theory of recovery. The only error was by the district judge in adding together the two $18,000 sums. It was the district judge, not the jury, who created the double recovery that prompted, in part, the motion for a new trial. The remittitur simply, in effect, corrected the district judge's error. Since the damages awarded by the jury were not reduced, there is no basis for the defendants'

argument that the reduction in compensatory damages requires that the award of punitive damages be vacated.