**Dean CRAFT, Plaintiff–Appellant,**

v.

**PHILADELPHIA INDEMNITY IN-SURANCE COMPANY, a foreign corporation, Defendant–Appellee.**

No. 13–1209.

United States Court of Appeals, Tenth Circuit.

Feb. 11, 2014.

Scott R. Larson, Esq., Scott R. Larson, PC, Denver, CO, for Plaintiff–Appellant.

Bethany K. Culp, Suzanne Louise Jones, Hinshaw & Culbertson, Minneapolis, MN, for Defendant–Appellee.

Before TYMKOVICH, HOLLOWAY, and MATHESON, Circuit Judges.

## CERTIFICATION OF QUESTION OF STATE LAW

TIMOTHY M. TYMKOVICH, Circuit Judge.

Dean Craft appeals the district court's dismissal of his suit against his insurer, Philadelphia Indemnity Insurance Company. At issue is whether Colorado's notice-prejudice rule for liability insurance policies applies to claims-made policies or whether Colorado applies this rule only to occurrence policies. Inherent in that inquiry are two important and unsettled questions of state law, which we certify to the Colorado Supreme Court.

## I. Background

Philadelphia Indemnity issued a policy that covered claims made against Campbell's C–Ment Contracting's officers, including Dean Craft, during the period of November 2009 to November 2010. In October 2010, Craft was sued for alleged misrepresentations he made during a merger.

Craft, allegedly unaware of this policy, defended himself against the suit. When he learned of the policy in March 2012, he contacted Philadelphia Indemnity to discuss potential coverage, but Philadelphia Indemnity did not respond. In June 2012, ten days before trial, Craft settled the suit against him.

Philadelphia Indemnity contacted Craft for the first time several weeks later and eventually denied Craft's claim for reimbursement of his legal fees and settlement payment. Craft then sued Philadelphia Indemnity, claiming breach of contract, breach of the covenant of good faith and fair dealing, and violation of a state statute

prohibiting improper denial of insurance claims.

Philadelphia Indemnity moved to dismiss the suit because Craft had been the party to breach the contract by failing to provide timely notice of the claim against him. Craft's policy required, as an express condition precedent, that he give notice 1) as soon as practicable after learning of the claim, and 2) no later than 60 days after the expiration of the policy. Craft does not claim to have met either of these requirements.

Craft argued, however, that, under Colorado's notice-prejudice rule—which the Colorado Supreme Court adopted in *Friedland v. Travelers Indem. Co.,* 105 P.3d 639, 643 (Colo.2005)—a liability insurer may not deny coverage for late notice without first showing that the delay prejudiced the insurer's interests. The District of Colorado granted the motion to dismiss, holding that Colorado's notice-prejudice rule applies only to occurrence policies and not to claims-made policies such as Craft's.

## II. Analysis

We ask the Colorado Supreme Court to consider two questions: 1) the applicability of the notice-prejudice rule to claims-made liability policies as a general matter; and 2) the applicability of the rule to one or both types of notice provisions in claims-made policies.

### A. *The Notice–Prejudice Rule's Applicability to Claims–Made Policies*

Colorado law draws clear distinctions between occurrence policies and claims-made policies. "A pure claims-made policy provides coverage for claims made during the policy period, regardless of when the events out of which the claim arose occurred. In contrast, an occurrence policy provides coverage for all 'occurrences'

which take place during a policy period, regardless of when the claim is made." *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1357 (Colo.1993) (citations omitted); *see also* 3 COLO.CODE REGS. § 702–5:5. Craft's policy is a claims-made policy.

■ Whether *Friedland*'s notice-prejudice rule applies to claims-made policies is a novel question of Colorado law. Although *Friedland* itself discusses the rule in the context of liability policies generally, the policy before the Court in *Friedland* appears to be an occurrence policy.[1] In fact, it is our understanding that Colorado has never applied the notice-prejudice rule to a claims-made policy.

Since our role in diversity suits such as this one is to predict the decision of the state court, *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *see also Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we are especially sensitive to Colorado law's conflicting indicators on this issue. For example, while *Friedland* does not distinguish between occurrence and claims-made policies, *Friedland*'s stated rationale and Colorado contract law may imply that the Colorado Supreme Court would not broadly apply *Friedland*'s rule in this context.

Although we might have attempted to reconcile this apparent tension in other circumstances, we believe this question is of particular importance to Colorado insurers and insureds. Thus, for the following reasons we conclude this issue is worthy of the attention of the Colorado Supreme Court.

*First,* were we to read *Friedland* to apply to claims-made policies, our precedent, when it applies, would render Colorado law an outlier on this issue. Almost every court that has reached this question has declined to apply the notice-prejudice rule to claims-made policies. *E.g., Matador Petroleum Corp. v. St. Paul Surplus Lines Ins.*, 174 F.3d 653, 659 (5th Cir.1999) (applying Texas law); *Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634–35 (8th Cir.1996) (applying Missouri law); *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1425 (9th Cir.1991) (applying California law); *United States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir.1989) (applying Ohio law); *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 425 (8th Cir.1989) (applying Minnesota law); *City of Harrisburg v. Int'l Surplus Lines Ins. Co.*, 596 F.Supp. 954, 962 (M.D.Pa.1984), *aff'd*, 770 F.2d 1067 (3d Cir.1985) (applying Pennsylvania law); *Bianco Prof'l Ass'n v. Home Ins. Co.*, 144 N.H. 288, 740 A.2d 1051, 1057 (1999); *T.H.E. Ins. Co. v. P.T.P. Inc.*, 331 Md. 406, 628 A.2d 223, 228 (1993); *Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 406 (1985); *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512, 515 (Fla.1983).[2]

*Second,* whether the notice-prejudice rule applies to claims-made policies could play a role in the availability of those

---

1. Although neither the Court's opinion nor the available record materials classify Mr. Friedland's policy as an occurrence or claims-made policy, it appears to be an occurrence policy because it covered a lawsuit filed over ten years after the policy expired.

2. One case applies notice-prejudice to claims-made policies because a Wisconsin statute was directly on point. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1094 (7th Cir.1999) (relying on Wisconsin Statute § 632.26, which provides that failure to give notice as required by the policy does not bar liability in absence of prejudice). Although the Seventh Circuit declined to read an exception for claims-made policies into a clearly articulated state statute, we do not consider their decision persuasive here because the Colorado General Assembly has not enacted a comparable statute.

policies. Occurrence policies and claims-made policies are substantially different insurance products. In general, claims-made policies are less expensive than occurrence policies, largely because the insurer may " 'close its books' on a policy at its expiration and thus [ ] attain a level of predictability unattainable under standard occurrence policies." *Fin. Indus. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877 (Tex.2009). At the close of the policy period, the insurer may reallocate the funds it might otherwise have to hold in reserve. "Thus, an extension of the notice period in a 'claims made' policy constitutes an un-bargained-for expansion of coverage, *gratis,* resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *Zuckerman,* 495 A.2d at 406. That is not the case with occurrence policies, where the insurer should expect to cover lawsuits filed against its former clients at any time in the future.

For that reason, "[w]ere 'claims-made' policies subjected to the [notice-prejudice] rule, there would be no inducement to insurers to continue to offer coverage at premium rates substantially below comparable 'occurrence' policy rates" and might "force significantly higher premiums for assuming the increased risk." *DiLuglio v. New England Ins. Co.,* 959 F.2d 355, 358 (1st Cir.1992).

*Third,* applying the notice-prejudice rule to claims-made policies has different, and perhaps wider, contract law implications than applying the rule to occurrence policies. In a claims-made policy, "notice itself constitutes the event that triggers coverage," whereas, "[i]n the case of an 'occurrence' policy, any notice requirement is subsidiary to the event that triggers coverage." *Matador Petroleum,* 174 F.3d at 659. Accordingly, the notice provision in claims-made policies is a central feature

of the bargain between the parties—so much so that some courts have labeled policies like Craft's "claims-made-and-reported" policies. *E.g., First Am. Title Ins. Co. v. Cont'l Cas. Co.,* 709 F.3d 1170, 1172 (5th Cir.2013). For that reason, even courts that have imposed a prejudice requirement for occurrence policies' notice provisions—which some perceive to be "technicalities," *Friedland,* 105 P.3d at 646—hesitate to tinker with the much more operative notice provisions in claims-made policies for fear of interfering with the heart of the parties' agreement. *Matador Petroleum,* 174 F.3d at 659; *see also Hirsch v. Texas Lawyers' Ins. Exch.,* 808 S.W.2d 561, 565 (Tex.App.1991) ("We should not on our own rewrite policies to permit notice-prejudice to be applied to claims-made policies. It would be interfering with the public's right to contract."). Given that Colorado law generally discourages a court from "rewrit[ing] a contract and thereby chang[ing] its terms when it is plain, clear and unambiguous," *Alexander Dawson, Inc. v. Fling,* 155 Colo. 599, 396 P.2d 599, 602 (1964), we cannot confidently determine whether the Colorado Supreme Court would change the function of a central term in the contract.

*Finally,* the three policy reasons that persuaded the Colorado Supreme Court to expressly change state law in *Friedland* are less persuasive here, and applying the notice-prejudice rule in this context could have different and sometimes contrary implications on the Court's stated goals. In *Friedland,* the Court expressed concern that, if an insurer could deny coverage under an occurrence policy without showing prejudice, the insurer would "reap a windfall through a technicality." *Friedland,* 105 P.3d at 646. But, for the reasons we have set forth above, the notice provision of a claims-made policy is not a technicality at all; as we have described, it is a central element of the bargain be-

tween the parties, and, as a result, extending the insured's coverage without compensating the insurer would allow the insured to reap the windfall.

The *Friedland* Court also sought to protect innocent tort victims. 105 P.3d at 646. In this respect, extending the notice-prejudice rule to claims-made policies could be a double-edged sword. On one hand, declining to impose a prejudice rule would almost certainly mean that some defendants who had purchased liability insurance would not be covered and thus might not be able to adequately compensate the victims of their torts. But, on the other hand, claims-made policies arguably play an important role in the marketplace, allowing more people to secure liability insurance policies.

The final policy rationale the Court articulated in *Friedland* stemmed from the disparate bargaining power between insurers and their clients. *Id.* Because insurance policies are contracts of adhesion, the Court expressed concern that insureds do not have the opportunity to bargain for appropriate notice provisions. For this proposition, the *Friedland* Court looked also to *Clementi v. Nationwide Mut. Fire Ins. Co.*, which explained that "[b]ecause of both the disparity of bargaining power between insurer and insured and the fact that materially different coverage cannot be readily obtained elsewhere, [ ] insurance policies are generally not the result of bargaining." 16 P.3d 223, 229 (Colo.2001).

Although both occurrence policies and claims-made policies are adhesive contracts, buyers bargain for each policy's most operative provisions to the extent that they can choose between policies that are "materially different" in those key respects. For example, when an individual buys an occurrence policy, he shops around for one that covers the most occurrences for the best price. The notice

provisions of those policies, however, are fairly uniform. *Cf.* 3–20 Appleman on Insurance § 20.01.

Meanwhile, claims-made policy buyers have the opportunity to choose between policies with not only materially different prices but also with materially different reporting periods. A claims-made policyholder may, for example, extend his reporting period by purchasing a policy with "tail" coverage. *See Ballow,* 875 P.2d at 1357; *Gulf Ins. Co.,* 433 So.2d at 516; *see also* 3 Insurance Claims and Disputes § 11:5 (6th ed.). The ready availability of policies that have materially different reporting provisions suggests that the Court's concern for unequal bargaining power is not as applicable in the context of claims-made policies.

For these reasons, we think it prudent for the Colorado Supreme Court to define in the first instance the scope of its decision in *Friedland.*

### B. Notice Requirements within Claims–Made Policies

We have identified a second question of Colorado law related to this inquiry. If the Colorado Supreme Court determines that the notice-prejudice rule applies to claims-made policies, we are also asking that the Court determine whether the rule applies to all notice requirements in those policies.

There are two notice requirements in most claims-made policies. For example, Craft's policy requires that, "[i]n the event that a claim is made against the Insured, the Insured shall, as a condition precedent to the obligations of the Underwriter under this Policy, give written notice to the Underwriter *as soon as practicable*" and also that notice must not be given "*no later than 60 days after the expiration date* of this Policy." App. 73 (emphasis

added). The requirement that a claim be reported as soon as practicable is common in both occurrence and claims-made policies. 13 Couch on Ins. § 186:13. But the requirement that notice be given during the policy period is a signature of claims-made policies. *Id.*

As one commentator put it, the two notice provisions in a claims-made policy

> ... serve very different purposes. The first is directed at ensuring promptness of notice, maximizing the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured. The second is directed to the temporal boundaries of the policy's basic coverage terms, and is used to mark the point at which liability for the claim passes to an ensuing policy, frequently issued by a different insurer, which may have very different limits and terms of coverage. Notice under the second provision is not simply part of insured's duty to cooperate, but defines the limits of the insurer's obligation, and if there is no timely notice, there is no coverage.

13 Couch on Ins. § 186:13.

Thus, some courts that have declined to apply the notice-prejudice rule in cases like Craft's have done so by determining that, although an insurer must show prejudice before denying coverage on the basis that the insured failed to give notice as soon as practicable, the insurer need not show prejudice if the insured failed to give notice within the policy period. *E.g., Chas. T. Main, Inc. v. Fireman's Fund Ins. Co.,* 406 Mass. 862, 551 N.E.2d 28, 30 (1990) (holding that the notice-prejudice rule "applies only to the 'as soon as practicable' type of notice and not to the 'within the policy year' type of reporting requirement" because "[a] requirement that an insurer on a claims-made policy must show that it was prejudiced by its insured's failure to report a claim within the policy period or a stated period thereafter would defeat the fundamental concept on which claims-made policies are premised."); *see also Textron, Inc. v. Liberty Mut. Ins. Co.,* 639 A.2d 1358, 1365–66 (R.I.1994) (holding that, when occurrence policies contain both types of notice requirement, the notice-prejudice rule does not apply to the reporting requirement).

In cases like this one, making this distinction would have the same effect as generally declining to apply the notice-prejudice rule to claims-made policies. Although this rule would be narrower than a general rule, requiring an insurer to show prejudice only if an insured gives notice within the policy period but could have practicably given notice earlier would likely allay most of the policy and contract-law concerns that courts in other jurisdictions have identified.

But Colorado law does not currently make such a distinction. Thus, we look to the Colorado Supreme Court for guidance on whether, if the notice-prejudice rule applies to claims-made policies, it applies to both notice provisions in those policies.

## III. Questions Presented

We have determined that Colorado case law is unclear about 1) whether Colorado's notice-prejudice rule applies to claims-made liability insurance policies, and 2) if so, whether the rule applies to both types of notice requirements in those policies. In light of the lack of precedential decisions on point and in furtherance of comity and federalism, we conclude the Colorado Supreme Court should have the opportunity to answer these important questions in the first instance. We therefore certify both questions and respectfully request that the Colorado Supreme Court exercise

its discretion to accept them pursuant to 10th Cir. R. 27.1 and Colo.App. R. 21.1.

This appeal is ordered ABATED pending resolution of the certified questions.