2015 CO 11

**Dean CRAFT, Plaintiff–Appellant**

**v.**

**PHILADELPHIA INDEMNITY INSURANCE COMPANY, a foreign corporation, Defendant–Appellee.**

**Supreme Court Case No. 14SA43**

Supreme Court of Colorado.

February 17, 2015

Attorneys for Plaintiff–Appellant: Scott R. Larson, P.C., Scott R. Larson, Denver, Colorado, Recht Kornfeld, P.C., Heather R. Hanneman, Denver, Colorado.

Attorneys for Defendant–Appellee: Hall & Evans, L.L.C., John E. Bolmer, II, Denver, Colorado, Hinshaw & Culbertson LLP, Bethany K. Culp, Suzanne L. Jones, Minneapolis, Minnesota.

Attorney for Amici Curiae American Insurance Association, Complex Insurance Claims Litigation Association, and Property Casualty Insurers Association of America: Springer & Steinberg, P.C., JoAnne M. Zboyan, Denver, Colorado.

Attorneys for Amicus Curiae COPIC Insurance Company: Ruebel & Quillen Jeffrey Clay Ruebel, Casey A. Quillen, Westminster, Colorado.

Attorney for Amicus Curiae The Colorado Trial Lawyers Association: Roberts Levin Rosenberg PC, Bradley A. Levin, Denver, Colorado.

Attorneys for Amicus Curiae United Policyholders: Reed Smith LLP, James M. Davis, Chicago, Illinois, Reed Smith LLP, Timothy P. Law, Philadelphia, Pennsylvania, United Policyholders, Amy Bach, San Francisco, California.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 We accepted jurisdiction pursuant to C.A.R. 21.1 to answer questions of state law certified to this court by the United States Court of Appeals for the Tenth Circuit regarding the applicability of the "notice-prejudice rule" to claims-made insurance policies.

¶ 2 Under the notice-prejudice rule, an insured who gives late notice of a claim to his or her insurer does not lose coverage benefits unless the insurer proves by a preponderance of the evidence that the late notice prejudiced its interests. *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 643 (Colo. 2005). We first adopted the rule in the context of an underinsured motorist policy in *Clementi v. Nationwide Mutual Fire Insurance Co.*, 16 P.3d 223, 230 (Colo. 2001). We later applied it to a liability policy in *Friedland.* 105 P.3d at 643. However, the liability policy in *Friedland* was an occurrence policy—that is, a policy that provides

coverage for "occurrences" during a policy period, regardless of when a claim is made. We have not had occasion before today to address whether or how the notice-prejudice rule applies to claims-made liability policies.

¶ 3 A claims-made policy covers only those claims brought against the insured during the policy period and reported to the insurer by a date certain, typically within a brief window following the expiration of the policy period. The date-certain notice requirement effectuates the parties' arrangement and limits the insurer's liability to those claims reported within the time specified.

¶ 4 In this case, the insurer issued a policy that provided directors and officers liability coverage. The policy required the insured to give prompt notice of a claim; specifically, notice "as soon as practicable" after learning of the claim. The policy also required the insured to give notice of the claim by a date certain; specifically, "not later than 60 days" after the expiration of the policy. Near the end of the one-year policy period, a company officer was sued for alleged misrepresentations he made during a merger. Unaware of the insurance policy, the officer defended himself against the suit. When he learned of the policy, approximately sixteen months after the policy period had expired, he immediately contacted the insurer but did not receive a response. The officer later settled the suit. He then sued the insurer for denying coverage under the policy. The insurer removed the case to federal district court and moved to dismiss the case on grounds that the officer gave untimely notice of his claim. The district court granted the motion to dismiss, rejecting the officer's argument that the notice-prejudice rule applied to the claims-made policy issued by the insurer. The officer appealed, and the case is now before the Tenth Circuit.

¶ 5 The Tenth Circuit has certified two questions to this court: (1) whether the notice-prejudice rule applies to claims-made liability policies in general; and (2) if so, whether the rule applies to both types of notice requirements in those policies. *Craft v. Phila. Indem. Ins. Co.*, 560 Fed.Appx. 710, 715 (10th Cir. 2014).

¶ 6 We answer the certified questions more narrowly than originally presented because the parties have agreed in their briefing to this court that the prompt notice requirement of the claims-made policy in this case is not at issue. Accordingly, we restrict our analysis here to the date-certain notice requirement.

¶ 7 We hold that the notice-prejudice rule does not apply to a date-certain notice requirement in a claims-made insurance policy. In a claims-made policy, the date-certain notice requirement defines the scope of coverage. Thus, to excuse late notice in violation of such a requirement would rewrite a fundamental term of the insurance contract. Our opinion in *Friedland* did not address claims-made policies, and the public policy reasons we identified for extending the notice-prejudice rule to the liability policy in that case do not persuade us that the rule should also apply in this context. Accordingly, we reframe the certified questions as a single question: whether the notice-prejudice rule applies to the date-certain notice requirement of claims-made policies. We answer that question in the negative.

## I. Facts and Procedural History

¶ 8 Dean Craft, appellant in the Tenth Circuit Court of Appeals, was the principal shareholder and president of Campbell's C-Ment Contracting, Inc. ("CCCI"). In July 2007, Craft agreed to sell approximately ten percent of his CCCI shares to Suburban Acquisition Company ("Suburban") as part of a stock purchase and merger option agreement. In the 2007 agreement, Craft warranted that CCCI had good and marketable title to certain business assets, including water rights at a pond at CCCI's Arvada plant. In fact, CCCI had never owned the water rights. In June 2009, Craft sold the remainder of his shares back to CCCI.

¶ 9 In July 2010, Suburban sued Craft in Broomfield County District Court for breach of the 2007 agreement based on Craft's alleged misrepresentations regarding CCCI's water rights. The pleadings were later amended to add CCCI as a plaintiff-in-intervention and to include claims for fraud.

¶ 10 At the time he was sued, Craft did not know that CCCI and Suburban had purchased directors and officers liability insurance from appellee Philadelphia Indemnity Insurance Company ("Philadelphia").[1] As an express condition precedent to coverage, the policy required the insured to provide written notice to Philadelphia "as soon as practicable" after becoming aware of a claim, but "not later than 60 days" after the policy period expired. The relevant policy period for this coverage was November 1, 2009 to November 1, 2010.

¶ 11 Craft did not learn of the insurance policy until March 2012—more than a year after the policy period in which the suit was filed had expired. Craft immediately notified Philadelphia of the lawsuit against him, but Philadelphia did not respond. In June 2012, ten days before trial, Craft agreed to settle with Suburban and CCCI. Months later, Philadelphia responded to Craft's attorney's repeated inquiries by indicating only that certain policy exclusions applied to Craft's claim.

¶ 12 Craft sued Philadelphia in Broomfield County District Court for breach of contract, breach of good faith and fair dealing, and unreasonable delay and denial of payment of insurance benefits in violation of section 10–3–1116, C.R.S. (2014). Philadelphia removed the case to federal district court and moved to dismiss the suit on grounds that Craft failed to provide notice of the underlying claim against him within sixty days of the expiration of the policy period. The court granted Philadelphia's motion to dismiss, rejecting Craft's argument that the notice-prejudice rule of *Friedland v. Travelers Indemnity Co.*, 105 P.3d 639, 642 (Colo. 2005), applied to the policy in this case. The court reasoned that *Friedland* addressed an "occurrence" policy and that its holding does not apply to "claims-made" liability policies.

¶ 13 After Craft appealed this ruling, the Tenth Circuit certified the following questions of law to this court:

(1) whether the notice-prejudice rule applies to claims-made liability policies as a general matter; and

(2) whether the rule applies to one or both types of notice provisions in claims-made policies.

*Craft v. Phila. Indem. Ins. Co.*, 560 Fed. Appx. 710, 711 (10th Cir. 2014). In presenting the questions, the Tenth Circuit explained in depth its reluctance to apply the holding of *Friedland* to claims-made policies but concluded that this court should have an opportunity to address the scope of *Friedland*. *See id.* at 712–14.

## II. Analysis

¶ 14 We answer the certified questions more narrowly than originally presented because the parties have agreed in their briefing to this court that the prompt notice requirement of the claims-made policy in this case is not at issue. Accordingly, we restrict our analysis to whether the notice-prejudice rule applies to the date-certain notice requirement of a claims-made policy.

¶ 15 In resolving this issue, we review the development of Colorado's notice-prejudice rule and the salient differences between occurrence and claims-made liability insurance policies. In either type of policy, a "prompt" notice requirement protects the insurer's interest in investigating and defending a claim. Unique to a claims-made policy, however, a "date-certain" notice requirement serves only to effectuate the agreed-upon temporal limits of coverage. Thus, to excuse notice given after the expiration of the reporting period would rewrite a fundamental term of the insurance contract. Our holding in *Friedland* did not address the date-certain notice requirement of claims-made policies, and the public policy concerns we identified there do not counsel in favor of applying the notice-prejudice rule to such a requirement. For these reasons, we conclude that the notice-prejudice rule does not apply to a date-certain notice requirement in a claims-made insurance policy.

### A. Background

¶ 16 To provide background for our analysis, we trace the history of the notice-preju-

---

1. This coverage insured the company's directors and officers for their wrongful acts, including misstatements, misleading statements, and breach of duty, among other things.

dice rule in our case law, from our initial rejection of the rule, through our adoption of it in underinsured motorist cases, to our eventual extension of it to cases involving general liability insurance. We then differentiate between "occurrence" and "claims-made" insurance policies and briefly explore their conceptual differences. Finally, we identify the two types of notice requirements typically included in claims-made insurance policies—"prompt" and "date-certain"—and discuss the function each fulfills.

### 1. The Notice–Prejudice Rule

¶ 17 In *Marez v. Dairyland Insurance Co.*, 638 P.2d 286, 288 (Colo. 1981), *overruled by Friedland v. Travelers Indemnity Co.*, 105 P.3d 639 (Colo. 2005), we examined whether an automobile insurer was obligated to defend or indemnify an insured who failed to notify the insurer of an accident. In that case, while driving petitioner Julia Montoya's automobile, petitioner Bernadette Valdez collided with James Marez, seriously injuring him. *Id.* at 287. Montoya's automobile was insured by Dairyland. *Id.* The Dairyland policy required the insured to give written notice of an accident "as soon as practicable," and to give immediate notice of a claim or suit. *Id.* at 287–88. Neither Valdez nor Montoya ever provided Dairyland with written notice of the accident or Marez's claim against them. *Id.* at 288. Dairyland learned of the accident by chance more than two-and-a-half years later and brought a declaratory judgment action to determine its obligations and liabilities under the policy. *Id.*

¶ 18 At trial, Montoya sought to present evidence that Dairyland was not prejudiced by the lack of notice. *Id.* The trial court ruled as a matter of law that prejudice to Dairyland, if any, could not be considered in determining Dairyland's obligations under the policy. *Id.* On appeal, Valdez and Montoya argued that public policy encouraged compensation of persons injured in automobile accidents and that, when a policy is otherwise in effect, an insurer should not be able to deny liability without first showing that it has been prejudiced by the delay in notice. *Id.* at 290. We disagreed and adhered to the then-prevailing majority rule

that an unexcused delay in giving notice relieves the insurer of its obligations under the policy, regardless of whether the insurer was prejudiced by the delay. *See id.*

¶ 19 Justice Quinn dissented, arguing that the purpose of a policy provision requiring prompt notice is to prevent the insurer from being prejudiced in its investigation and defense of a claim. *Id.* at 292 (Quinn, J., dissenting). In his view, an insured who fails to provide notice should be allowed to present evidence to rebut a presumption of prejudice to the insurer; if the insured rebuts that presumption, the insurer should bear the burden of showing actual prejudice. *Id.* The majority, however, was unwilling to announce a new prejudice rule in a case in which the insureds had "totally failed to comply with the contract conditions"—although it signaled that it was open to revisiting the issue in a more factually compelling context. *Id.* at 291.

¶ 20 Twenty years later, we did so in *Clementi v. Nationwide Mutual Fire Insurance Co.*, 16 P.3d 223 (Colo. 2001). Clementi was a Colorado state trooper who was injured in an automobile accident in the line of duty. *Id.* at 224. He notified his insurer, Nationwide, of his underinsured motorist ("UIM") claim seventeen months after the accident, and five months after he had learned that the other driver was underinsured. *Id.* at 224–25. Nationwide sought a declaratory judgment voiding UIM coverage under the policy because Clementi had failed to provide notice "as soon as practicable." *Id.* Clementi argued that, in order to void the UIM coverage, Nationwide should be required to show it was prejudiced by the late notice. *See id.* at 225. The trial court rejected Clementi's argument, citing *Marez,* and the court of appeals affirmed. *Id.*

¶ 21 We granted certiorari in *Clementi* to address "the status of the so-called notice-prejudice rule in Colorado." *Id.* We did not confront our previous holding head-on; instead, we distinguished *Marez* as a case involving a liability policy and a "total failure to notify" the insurer. *Id.* at 227–28. We noted that, "[w]hile some courts continue to apply the traditional approach to late-notice liability cases, the vast majority of courts

have joined the modern trend in the context of a UIM case." *Id.* at 228. Although we limited our holding in *Clementi* to late notice in the UIM context, our analysis in that case laid the groundwork for our later decision in *Friedland.*

¶ 22 In reevaluating Colorado's stance on the notice-prejudice rule in *Clementi,* we noted that, generally, an insurer is prejudiced by an insured's breach of a policy requirement where the breach defeats the purposes of the requirement. *Id.* at 229. The policy requirement in *Clementi* obligated the insured to provide written notice of a claim "as soon as practicable." *Id.* at 226. We observed that such a notice requirement protects the insurer's opportunity to investigate and defend a claim adequately. *Id.* at 227, 229. Yet where the insurer in fact has that opportunity, the rationale for strict enforcement of such a notice requirement is absent. This is the principle behind the notice-prejudice rule, presaged by Justice Quinn in his *Marez* dissent. *See* 638 P.2d at 292 (Quinn, J., dissenting).

¶ 23 In *Clementi,* we noted that other jurisdictions offered persuasive public policy justifications for applying the notice-prejudice rule, including "(1) the adhesive nature of insurance contracts, (2) the public policy objective of compensating tort victims, and (3) the inequity of the insurer receiving a windfall due to a technicality." 16 P.3d at 229 (citing *Alcazar v. Hayes,* 982 S.W.2d 845, 850 (Tenn.1998); *Aetna Cas. & Sur. Co. v. Murphy,* 206 Conn. 409, 538 A.2d 219, 222 (1988)). We observed that Colorado had embraced similar public policy principles: this court had already acknowledged the unequal bargaining power between the parties to an insurance contract; the Colorado legislature had recognized the public interest in compensating accident victims by enacting the Motor Vehicle Financial Responsibility Act, §§ 42-7-101 to -609, C.R.S. (2014); and Colorado courts had invalidated certain provisions in UIM policies resulting in a forfeiture of coverage as void against public policy. *See Clementi,* 16 P.3d at 229-30. In light of Colorado's recognition of the policy reasons underlying the notice-prejudice rule, we joined the modern trend and adopted the

notice-prejudice rule for UIM cases. *Id.* at 230.

¶ 24 Four years later, in *Friedland,* we applied the notice-prejudice rule to a liability policy, and in so doing, overruled *Marez* to the extent it applied to late-notice liability cases. *See* 105 P.3d at 643. In that case, Friedland sued his insurer, Travelers Indemnity Company, seeking indemnification for defense and settlement costs he incurred in defending an environmental lawsuit brought against him. *Id.* at 641. The trial court granted Travelers' motion for summary judgment because Friedland had materially breached the policy's notice provisions by giving Travelers unreasonably late notice. *Id.* at 642–43. The Travelers policy required Friedland to give written notice of an occurrence "as soon as practicable," and immediate notice of a claim or suit. *Id.* at 642. Friedland did not notify Travelers of the lawsuit until more than six years after the suit was filed and six months after settling the claims against him. *Id.* The trial court did not consider whether Travelers had been prejudiced by the untimely notice, citing our decision in *Marez. Id.* at 642–43.

¶ 25 We reversed. *Id.* at 641. We concluded that, although notice given after the defense and settlement of a lawsuit is unreasonable as a matter of law and the insurer is presumed to have been prejudiced by the delay, the insured must have an opportunity to rebut the presumption of prejudice. *Id.* at 643. Accordingly, we extended the notice-prejudice rule of *Clementi* to liability policies and expressly overruled *Marez* to the extent it applied to late-notice liability cases. *Id.* at 647. We then adopted the approach expressed in Justice Quinn's *Marez* dissent:

(1) there is a presumption of prejudice to the insurer in instances where the insured provides notice after disposition of the liability case, (2) the insured has the burden of going forward with evidence to dispel this presumption, (3) if such evidence is presented, the presumption loses any probative force it may have, and (4) it is then up to the insurer to go forward with the evidence that actual prejudice existed.

*Id.* at 648.

¶ 26 Our policy rationale for extending the notice-prejudice rule to liability policies in

*Friedland* tracked the rationale for adopting the rule for UIM policies in *Clementi.* *See id.* at 645–47. First, we observed that, as with UIM policies, liability policies are unlike ordinary negotiated contracts in that the prospective insured is in an unequal bargaining position when purchasing a prepackaged product offered on the insurer's terms. *Id.* at 646. Second, a rule that favors the payment of benefits serves the policy goal of compensating tort victims, whether they are injured in automobile accidents or suffer damages from the unlawful conduct of a business entity or its directors. *Id.* Third, because the insured pays premiums for the liability coverage, an insurer should not be able to "reap a windfall" by invoking a technicality to deny coverage. *Id.* We observed that the notice provisions of the liability policy in *Friedland* constituted "the parallel technicality" as the notice provision in *Clementi. Id.* at 642, 646. Therefore, we overruled *Marez* and extended the notice-prejudice rule to the liability policy in that case. *Id.* at 647.

¶ 27 In the ten years since deciding *Friedland,* we have not had occasion to address the reach of our holding in that case. Specifically, we have not considered whether the notice-prejudice rule applies to claims-made liability policies as well as occurrence liability policies. Outside of this case, at least one federal court applying Colorado law has concluded that it does not. *See Salt Lake Toyota Dealers Ass'n v. St. Paul Mercury Ins. Co.,* No. 2:05–CV–497TS, 2006 WL 1547996, at *4 & n. 42 (D.Colo. June 6, 2006) (noting that *Friedland* involved an occurrence policy, not a claims-made policy). In certifying the questions in this case, the Tenth Circuit likewise observed that the policy at issue in *Friedland* was an occurrence policy and that Colorado has never applied the notice-prejudice rule to a claims-made policy. *Craft v. Phila. Indem. Ins. Co.,* 560 Fed.Appx. 710, 712 (10th Cir. 2014). Nonetheless, given the importance of the question to Colorado insurers and insureds, the Tenth Circuit certified the questions here to allow this court to determine the scope of our holding in *Friedland. Id.* at 712, 714.

## 2. Occurrence vs. Claims–Made Policies

¶ 28 The conceptual differences between occurrence and claims-made liability policies lie at the core of this case. The Colorado Division of Insurance defines an occurrence policy as "an insurance policy that provides liability coverage only for injury or damage that occurs during the policy term, regardless of when the claim is actually made." 3 Colo. Code Regs. 702–5:5–1–8 (2014). A claims-made policy, by contrast, is "an insurance policy that provides coverage only if a claim is made during the policy period or any applicable extended reporting period." *Id.* Thus, occurrence policies and claims-made policies are almost the mirror image of each other: an occurrence policy provides coverage for events that happen during the policy period, even if the claim is brought many years in the future; a claims-made policy provides potential coverage for claims brought against the insured during the policy period, even if the underlying event giving rise to liability occurred many years in the past. *See* 1 Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance* § 1:5, at 15–16 (3d ed. 2009 & Supp. 2014). With an occurrence policy, an occurrence entitles the insured to benefits under coverage that already exists, and timely notice is merely a condition of retaining that coverage. 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:5 (6th ed. 2013). Claims-made policies, on the other hand, provide only *potential* coverage because timely notice of the claim to the insurer is a prerequisite to coverage under such policies. *Id.* In other words, coverage is triggered only if the insured provides timely notice of the claim.

¶ 29 This conceptual difference has important practical implications for the risks that insurers undertake and the premiums that insureds pay. Claims-made policies proliferated in the 1970s as a solution to the problems many insurers were facing in writing professional malpractice insurance policies. *See* Sol Kroll, *The Professional Liability Policy "Claims Made",* 13 Forum 842, 849–50 (1978). In setting premiums for occurrence policies, underwriters had difficulty predicting decades into the future considerations such as inflationary trends, jury ver-

dicts that outpaced inflation, and new theories of liability. *Id.* at 846, 848. Faced with increasing costs of doing business, the typical insurer either had to raise premiums, offer fewer products, or withdraw from the professional liability insurance market altogether. *Id.* at 847. With claims-made policies, however, the risk to the insurer passes when the policy period expires. Given this limitation, "a more predictable rate structure" could be assembled and justified for such policies, and, thus, rates bore a "more reasonable relationship to the current fiscal situation in a given state." *Id.* at 848.[2]

¶ 30 Having sketched out the basic workings of occurrence and claims-made policies, we proceed to examine the notice provisions that each type of policy typically contains, as well as the functions that these provisions fulfill. The date-certain notice requirement—unique to claims-made policies—is integrally related to the nature of such policies, a fact that guides our resolution of the question presented in this case.

### 3. Prompt vs. Date–Certain Notice Requirements

¶ 31 Both occurrence and claims-made policies typically contain a requirement that the insured notify the insurer of a claim or potential claim "promptly." *See* 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 186:13, at 32 (3d ed. 2005 & Supp. 2014). Such provisions require the insured to notify the insurer of an accident or occurrence "as soon as practicable," *see, e.g., Clementi,* 16 P.3d at 226; *Marez,* 638 P.2d at 287, or to give notice of a claim or suit "immediately," *see, e.g., Friedland,* 105 P.3d at 642; *Marez,* 638 P.2d at 287. In *Clementi,* we explained that the purpose of such a notice requirement is to "allow an insurer to

adequately investigate and defend a claim." 16 P.3d at 229. Likewise, in *Friedland,* we identified the "significant interests" served by a prompt notice requirement, including "the opportunity to investigate or defend the insured's claim and to receive the insured's cooperation in the process of gathering information, negotiating settlements, securing and giving evidence, attending hearings and trials, and assisting witnesses to attend hearings and trials." 105 P.3d at 643–44. Where these purposes are defeated because an insured fails to give timely notice, an insurer suffers prejudice. *Clementi,* 16 P.3d at 229.

¶ 32 Claims-made policies typically contain a second type of notice requirement not found in occurrence policies: the requirement that the insured provide notice of a claim within the policy period or a defined reporting period thereafter. *See* 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 186:13, at 32 (3d ed. 2005 & Supp. 2014). Such a date-certain notice requirement fulfills a very different function than a prompt notice requirement. Whereas a prompt notice requirement serves to allow the insurer to investigate the claim and negotiate with the third party asserting the claim, the date-certain notice requirement defines the "temporal boundaries of the policy's basic coverage terms." *Id.* In other words, timely notice of a claim is the event that triggers coverage. *See* 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:5 (6th ed. 2013). For this reason, although excusing late notice and applying a prejudice requirement make sense in the context of a prompt notice requirement, extending such concepts to a date-certain notice requirement "would defeat the fundamental concept on which coverage is premised." *Id.*

---

**2.** Several special features of claims-made policies may either limit or marginally increase the insurer's risk. For example, a claims-made policy may contain a "retroactive date" that eliminates coverage for occurrences before that date, even if a claim based on such an occurrence is made during the policy period. *See Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1366 (Colo. 1993); 3 Colo. Code Regs. 702–5:5–1–8. Insureds, on the other hand, may be able to protect themselves from claims made after the policy period expires by purchasing an extended reporting period or

"tail," or by simply purchasing a follow-on policy with "prior acts" coverage. *Ballow,* 875 P.2d at 1357; 3 Colo. Code Regs. 702–5:5–1–8; 7 Steven Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, *Couch on Insurance* § 102:28, at 140 (3d ed. 2013 & Supp. 2014). If the insured opts for an extended reporting period, however, that period typically will cover only claims based on occurrences that happen during the policy period. *Ballow,* 875 P.2d at 1357; 7 Steven Plitt et al., *Couch on Insurance* § 102:28, at 140–41 (3d ed. 2013 & Supp. 2014).

## B. Contract Law

¶ 33 Principles of contract law in the insurance context reinforce our conclusion that the notice-prejudice rule does not apply to the date-certain notice provision in claims-made liability policies.

¶ 34 An insurance policy is a contract, and we must enforce the plain language of the policy if it is unambiguous. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007); *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). Nevertheless, an unambiguous provision of an insurance policy can be deemed void as against public policy. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1045 (Colo. 2011). Although the notice-prejudice rule does not render a notice provision void, in some circumstances it does allow insureds to avoid strict enforcement of a notice provision for public policy reasons. *See Clementi*, 16 P.3d at 230.

¶ 35 On the other hand, some public policy considerations counsel in favor of enforcing an unambiguous term in an insurance contract. As we recognized in *Bailey*, the freedom to contract is especially important in the insurance industry, where the terms of the policy distribute risk and thus define the very product that is bargained for. *See* 255 P.3d at 1047; *see also* 7 Steven Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, *Couch on Insurance* § 101:14, at 33 (3d ed. 2013 & Supp. 2014) ("Courts will ... exercise their power to void an insurance contract as against public policy only when the policy clearly is against public policy so that the court does not [ ] impair the parties' general freedom to contract.").

¶ 36 Applying the notice-prejudice rule to the date-certain notice requirement in a claims-made policy would alter the parties' agreed allocation of risk. In short, to excuse late notice in violation of such a requirement would alter a basic term of the insurance contract. *See* 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:5 (6th ed. 2013). Furthermore, it would prevent parties from defining coverage with certainty, no matter how definitive or express the notice requirement. Such a result would significantly diminish the advantages of claims-made policies for both insurers and insureds: insurers could no longer "close the books" on previous policy periods, and policy premiums presumably would rise to account for the risk that an insured might notify the insurer of a claim after the policy period has expired.[3] Even if insurers could somehow compensate for the additional risk, extending the notice-prejudice rule to the date-certain notice requirement of claims-made policies likely would decrease the availability of this type of insurance product in Colorado. In light of our state's policy favoring freedom to contract, this is something we decline to do.

¶ 37 Craft nevertheless urges us to apply the notice-prejudice rule where the insured has renewed the policy in effect at the time a claim was made. He proposes that the notice-prejudice rule should fill the "gaps" between successive policy periods that may result when a claim is made in one period but not reported until the subsequent policy period, after the previous policy's reporting period has expired. Applying the rule in this way, he argues, would fulfill the insured's reasonable expectations. We disagree.

¶ 38 As an initial matter, the cases upon which Craft relies for this proposed approach are largely inapposite. In those cases, the insured itself had purchased the relevant policy and later elected to renew it, creating the illusion of "seamless" coverage. *See Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1300–01 (11th Cir. 2003); *AIG*

---

3. Craft argues that, when a claims-made policy is renewed, the insurer cannot close the books on that policy and must maintain its reserve funds because the risk of liability continues into the renewal period. This misconceives of the risk against which a claims-made policy insures. A claims-made policy does not insure against the risk that a claim will be made for any given occurrence, but against the risk that a claim will be made during a certain period of time. *See St.*

*Paul Fire & Marine Ins. Co. v. Estate of Hunt*, 811 P.2d 432, 434 (Colo. App. 1991). When that period of time elapses, the risk of a claim during that period ceases to exist. *See id.* at 435 ("[I]n a 'claims-made' policy, the notice provision provides a certain date after which an insurer knows it no longer is liable under the policy and, accordingly, allows the insurer to fix more accurately its reserves for future liabilities and compute premiums with greater certainty.").

*Domestic Claims, Inc. v. Tussey*, No. 2008–CA–001248–MR, 2010 WL 3603844, at *1 (Ky. Ct. App. 2010) (unpublished); *Helberg v. Nat'l Union Fire Ins. Co.*, 102 Ohio App.3d 679, 657 N.E.2d 832, 833 (1995). Craft, by contrast, had no reason to rely on an appearance of seamless coverage when he was unaware that the policies even existed. Any "gap" in this case results not from the fact that a claim made toward the end of one policy period was reported during the next, as in *Cast Steel*, 348 F.3d at 1300, *Tussey*, 2010 WL 3603844, at *1, and *Helberg*, 657 N.E.2d at 833, but because the insured learned of the existence of insurance long after the relevant period had expired. Moreover, we note that the policy in this case states that a claim is not considered made until the insured receives notice of the claim, and so the potential "coverage gap" that Craft identifies is not implicated here. In any event, we have no occasion in this case to interpret the insurance contract as providing seamless coverage, as the courts did in *Cast Steel*, 348 F.3d at 1304, *Tussey*, 2010 WL 3603844, at *3–*4, and *Helberg*, 657 N.E.2d at 835. Rather, the question before us is whether the notice-prejudice rule applies to the date-certain notice requirement of claims-made policies.

¶ 39 We have acknowledged that a court may in some circumstances decline to enforce a provision in an insurance policy where doing so would frustrate the insured's reasonable expectations. *See Bailey*, 255 P.3d at 1053–54 (discussing the doctrine of reasonable expectations); *see also* 7 Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance* § 101:1, at 6–7 (3d ed. 2013 & Supp. 2014) (observing that an insured is only entitled to the coverage he or she contracted for unless he or she can successfully apply the doctrine of reasonable expectations). Yet the notice-prejudice rule is not a substitute for the doctrine of reasonable expectations. That doctrine is either an interpretative rule courts use to construe an insurance policy as it would be understood by an ordinary insured, *Bailey*, 255 P.3d at 1050–51, or a means of avoiding an unfair result where the insurer has engaged in some sort of deception, *see id.* at 1053–54. The notice-prejudice rule, by contrast, excuses an insured from fulfilling a straightforward contractual condition—the notice requirement—where the insurer cannot show that it was prejudiced by the lack of notice. *See Clementi*, 16 P.3d at 230. Indeed, the notice-prejudice rule typically applies when the insured has *unreasonably* delayed notifying the insurer of a claim and does not have a "justifiable excuse" for the delay. *Id.* at 226. Accordingly, we decline Craft's invitation to extend the notice-prejudice rule to claims-made policies simply because an insured may have reasonably expected that a claim would be covered, and we express no opinion on whether the doctrine of reasonable expectations applies to this case.

## C. *Friedland* Distinguished

¶ 40 Having explained the rationale for our decision, we conclude that this outcome is consistent with our precedent. Craft contends that *Friedland* extended the notice-prejudice rule to all notice requirements of liability policies. Philadelphia, meanwhile, points out that the policy at issue in *Friedland* was an occurrence policy and argues that our holding in that case does not apply to a date-certain notice requirement. We agree with Philadelphia.

¶ 41 In *Friedland*, we extended the notice-prejudice rule beyond UIM policies to "liability policies." 105 P.3d at 645. *Friedland's* reference to "comprehensive general liability policies," *id.* at 642, does not mean that the notice-prejudice rule generally applies to all aspects of all liability policies. Rather, that phrase refers to policies that "provide for broad coverage generally." 9A Steven Plitt, Daniel Maldonado & Joshua D. Rogers, *Couch on Insurance* § 129:1, at 6 (3d ed. 2005 & Supp. 2014); *see also Hoang*, 149 P.3d at 802; *Friedland*, 105 P.3d at 642 (stating that the policies at issue provided coverage for bodily injury, property damage, and medical payments to third parties). Notably, *Friedland* involved an occurrence policy, 105 P.3d at 642 (quoting policy provision referring to "an occurrence"), and prompt notice provisions, *id.* (quoting policy provisions requiring written notice of an occurrence "as soon as practicable," and immediate notice of a claim or suit). Thus, its

holding, though worded broadly, cannot be read to govern date-certain notice requirements in claims-made policies.

¶ 42 In addition, *Friedland*'s prejudice rationale hinged on the nature of prompt notice requirements and does not support applying the rule to the date-certain notice requirement of such policies. *See id.* at 643–44. As discussed above, however, the date-certain notice requirement in a claims-made policy serves no purpose beyond defining the scope of coverage under the policy.

¶ 43 Moreover, the public policy concerns that counseled in favor of extending the notice-prejudice rule to liability policies in *Friedland*—(1) the adhesive nature of insurance contracts, (2) the public's interest in compensating tort victims, and (3) the inequity of an insurer's receiving a windfall from a technicality—do not support applying the rule to date-certain notice requirements. *See id.* at 646.

¶ 44 Although the adhesive nature of insurance contracts is no different in the context of claims-made policies, we cannot say with any certainty that applying the notice-prejudice rule to such policies would result in greater compensation for tort victims. In some cases, the notice-prejudice rule would allow recovery where it otherwise would be barred by a date-certain notice requirement. On the other hand, if insurers could not limit risk through a date-certain notice requirement, they would likely, out of necessity, increase their premiums and reduce the number of claims-made policies they offer. As a result, fewer policies might be issued, potentially outweighing the marginal increase in coverage that the notice-prejudice rule would create by excusing late notice in some instances. Cognizant of these competing effects on the overall compensation of tort victims, we agree with the Tenth Circuit that applying the notice-prejudice rule to the date-certain notice requirement of claims-made policies could be a "double-edged sword." *Craft*, 560 Fed.Appx. at 714.

¶ 45 Importantly, strict enforcement of a date-certain notice requirement does not result in a windfall for the insurer based on a technicality. When applied to a prompt notice requirement, the notice-prejudice rule avoids forfeiture of coverage (based on a "technicality") *for an otherwise covered claim*. But, as discussed above, the date-certain notice requirement of a claims-made policy is a fundamental term of the insurance contract, and notice under such a provision is a material condition precedent to coverage. Thus, to apply the notice-prejudice rule to excuse an insured's noncompliance with a date-certain notice requirement essentially rewrites the insurance contract and effectively creates coverage where none previously existed. As the Tenth Circuit noted, "extending the insured's coverage without compensating the insurer would allow the *insured* to reap the windfall." *Id.* (emphasis added). In short, strict enforcement of the date-certain notice requirement of a claims-made policy does not give rise to the concerns of inequity we discussed in *Friedland*.

### III. Conclusion

¶ 46 We have reframed the certified questions as whether the notice-prejudice rule applies to the date-certain notice requirement of claims-made policies. We answer that question, as reframed, in the negative and return this case to the United States Court of Appeals for the Tenth Circuit for further proceedings.