Colorado Supreme Court Opinions || April 25, 2016

Colorado Supreme Court -- April 25, 2016
2016 CO 22. No. 13SC815. Travelers Property Casualty Company of America v. Stresscon Corp.

 The Supreme Court of the State of Colorado
 2 East 14th Avenue • Denver, Colorado 80203

 2016 CO 22 

 Supreme Court Case No. 13SC815 7 
 Certiorari to the Colorado Court of Appeals  
 Court of Appeals Case Nos. 11CA1239 and 11CA1582  

 Petitioner:  
 Travelers Property Casualty Company of America, a Connecticut company,  
 v. 
 Respondent:  
 Stresscon Corporation, a Colorado corporation. 

 Judgment Reversed  en banc  
 April 25, 2016

 Attorneys for Petitioner:  
 Wheeler Trigg O’Donnell LLP 
 Malcolm E. Wheeler  
 Evan Stephenson 
 Denver, Colorado  
   
 Attorneys for Respondent:  
 Zonies Law LLC 
 Sean Connelly 
 Denver, Colorado 
 
 Sherman & Howard L.L.C. 
 Bret R. Gunnell 
 Katherine D. Varholak 
 Brooke Yates 
 Denver, Colorado  
 
 Attorneys for Amici Curiae American Insurance Association & The Property Casualty  Insurers Association of America:  
 Hall & Evans, L.L.C. 
 Alan Epstein 
 Denver, Colorado  
 
 Attorneys for Amicus Curiae The Colorado Trial Lawyers Association: 7 
 Roberts Levin Rosenberg PC 
 Bradly A. Levin  
 Michael J. Rosenberg 
 Denver, Colorado  
   
 Attorneys for Amicus Curiae Complex Insurance Claims Litigation Association:  
 White and Steele, P.C. 
 Frederick W. Klann 
 Denver, Colorado               
     
 JUSTICE COATS delivered the Opinion of the Court.  
 JUSTICE MÁRQUEZ dissents, and JUSTICE HOOD and JUSTICE GABRIEL join in  the dissent.  

  

 ¶1 Travelers petitioned for review of the court of appeals’ judgment affirming the district court’s denial of its motion for directed verdict in a lawsuit brought by its insured, Stresscon.  Much as the district court had done, the appellate court rejected Travelers’ contention that the no-voluntary-payments clause of their insurance contract relieved it of any obligation to indemnify Stresscon for payments Stresscon had made without its consent.  Instead, the court of appeals found that this court’s opinion in Friedland v. Travelers Indemnity Co., 105 P.3d 639 (Colo. 2005), permitting the insured in that case an opportunity to demonstrate a lack of prejudice from its failure to comply with a notice requirement of its insurance contract, had effectively overruled our prior “no voluntary payments” jurisprudence to the contrary and given Stresscon a similar opportunity.

 ¶2 Because our adoption of a notice-prejudice rule in Friedland did not overrule any existing “no voluntary payments” jurisprudence in this jurisdiction, and because we decline to extend our notice-prejudice reasoning in Friedland to Stresscon’s voluntary payments, made in the face of the no-voluntary-payments clause of its insurance contract with Travelers, the judgment of the court of appeals is reversed.

 I. 

 ¶3 Stresscon Corporation, a subcontracting concrete company, filed suit against Travelers Property Casualty Company of America, alleging, among other things, that Travelers acted in bad faith, unreasonably delaying or denying its claim for covered insurance benefits; and Stresscon sought awards of two times the covered benefits along with fees and costs, as prescribed by statute.  Stresscon’s claims for relief arose from a serious construction accident in July 2007, which was caused by a crane operator employed by a company that was itself a subcontractor of Stresscon.  Stresscon’s general contractor, Mortenson, sought damages from Stresscon, asserting Stresson’s contractual liability for the resulting construction delays, and Stresscon in turn sought indemnification from Travelers.

 ¶4 Although there was much dispute over the factual and legal import of Travelers’ reservation of rights and other of its communications with both Stresscon and Mortenson concerning Mortenson’s claim, there was no dispute that by December 31, 2008, Travelers had not paid the damages asserted by Mortenson.  There was also no dispute that on December 31, 2008, despite Mortenson’s failure to bring a lawsuit or seek arbitration against Stresscon, Mortenson and Stresscon entered into a settlement agreement without consulting Travelers.  The agreement settled, without differentiation as to amount, this accident-related claim, along with other unrelated and concededly uncovered Mortenson claims against Stresscon.  In March 2009, also without prior notice of the settlement agreement, Stresscon filed suit against several entities, including Travelers, the subcontracting crane company, and various other insurers; and with regard to Travelers, it ultimately prevailed, winning a verdict for bad faith breach of the insurance contract and an award of the statutory amount, costs, and attorney fees.

 ¶5 With regard to the issue upon which review was granted in this court, Travelers moved for summary judgment in the trial court on the grounds that it owed Stresscon no duty of indemnification for the amount of Stresscon’s settlement, according to the terms of the no-voluntary-payments provision of the policy, which stated, “No insured will, except at that insured’s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.”  The district court denied Travelers’ motion, finding by analogy to the so-called “notice-prejudice” rule previously adopted by this court with regard to an insured’s failure to give timely notice of a claim concerning an occurrence-based liability policy, that the policy’s no-voluntary-payments provision could relieve Travelers of indemnification only if Travelers suffered prejudice from Stresscon’s settlement, and that the question of prejudice involved disputed matters of fact, which could not be resolved by summary judgment.  Travelers renewed essentially the same challenge?that it owed Stresscon no duty of indemnification as the result of Stresscon’s settlement with Mortenson, either because no proof of prejudice was required for enforcement of the no-voluntary-payments provision or, alternatively, because Travelers was necessarily prejudiced by being deprived of the opportunity to litigate Mortenson’s claim?by motion for directed verdict at the close of Stresscon’s case, again after the jury returned a verdict for Stresscon, by motion for judgment notwithstanding the verdict, and finally on direct appeal.

 ¶6 The court of appeals affirmed these rulings of the district court, characterizing the question before it on appeal as whether an insured’s breach of a no-voluntary-payments clause will always bar the insured from receiving benefits, and answering that question in the negative, in express reliance on the notice-prejudice rule adopted by this court in Friedland v. Travelers Indemnity Co., 105 P.3d 639 (Colo. 2005).  The intermediate appellate court reasoned that although our notice-prejudice rule was announced with regard to the failure of an insured to give timely notice of a third-party claim to its insurer, this court’s express tailoring of the prejudice determination for cases in which notice was not given until after settlement, like Friedland itself, demonstrated that we contemplated application of the same notice-prejudice rule to no-settlement or no-voluntary-payments provisions.  In addition, the court of appeals panel below found persuasive the reasoning of another panel of that court in reaching the same conclusion in the uninsured motorist context, see Lauric v. USAA Cas. Ins. Co., 209 P.3d 190 (Colo. App. 2009), the reasoning of other jurisdictions limiting in various ways the enforceability of particular no-settlement or no-voluntary-payments provisions, and policy considerations it considered to be substantially similar to those upon which we relied in adopting a notice-prejudice rule in Friedland.

 ¶7 By writ of certiorari, we agreed to review the court of appeals’ extension of our notice-prejudice rule to the enforcement of the no-voluntary-payments provision in this case.

 II. 

 ¶8 In Friedland v. Travelers Indemnity Co., 105 P.3d 639 (Colo. 2005), this court extended the notice-prejudice rule it had formulated and first applied in the uninsured motorist context in Clementi v. Nationwide Mutual Fire Insurance Co., 16 P.3d 223 (Colo. 2001).  In Friedland, we applied it to an occurrence-based insurance policy, under the terms of which the plaintiff sought indemnification after settling an environmental clean-up action brought against him by the federal and state governments.  105 P.3d at 642.  For various policy-related reasons, we held that the insurer could not be absolved of its coverage obligations by a failure of the insured to comply with a notice provision of the policy alone, but only upon a showing of prejudice resulting from such a failure.  Id. at 648–49.  In Friedland we also expressly rejected the argument of the insurer that notice after settlement amounted to no notice at all, id. at 647, but because of the greater likelihood that prejudice would result in that kind of situation, we tailored the determination of prejudice specifically to the situation in which notice has not been given until after the insured has already settled the case, id. at 648.

 A.  

 ¶9 We did not, however, also implicitly extend our newly minted notice-prejudice rule to no-voluntary-payments or consent-to-settle provisions, as the court of appeals believed.  Quite the contrary, we took pains to note that in the insurer’s motion for summary judgment in Friedland, it had expressly raised the no-voluntary-payments provision of the insurance policy at issue in that case as a bar to recovery, Id. at 642, and we expressly declined to address that issue, for the reason that the trial court had not yet done so.  id. at 649 n.6.  In the absence of any ruling concerning the meaning of that provision and possible factual disputes or defenses by Friedland, rather than opining on the effect of payments voluntarily made or settlements voluntarily entered into by an insured in the face of a contract provision barring such payments or obligations or expressly excluding them from coverage, we limited ourselves to extending the notice-prejudice rule announced in Clementi to liability policies, id. at 646, and tailoring the prejudice determination to the situation in which notice of a claim was given only after settlement, id. at 648.

 ¶10 In Friedland, we therefore merely reversed the trial court’s order of summary judgment, which was granted on the sole ground that the insured failed to give timely notice as required by the provisions of the insurance contract at issue there.  In our remand order, we expressly left to the trial court’s further determination Friedland’s remaining grounds for summary judgment, including any questions concerning the nature and effect of “Friedland’s unilateral settlement.”  Id. at 649.  Whatever the state of the law in this jurisdiction may have been with regard to the no-voluntary-payments provision in Friedland, or the one at issue before us today, it was neither addressed nor directly impacted by our decision to extend our notice-prejudice rule in Friedland.

 B. 

 ¶11 Also unlike the court of appeals, we do not find our justification for adopting a notice-prejudice rule in Clementi and Friedland to apply with the same force to the enforcement of agreements not to incur costs or obligations on behalf of an insurer without the insurer’s consent.  In Craft v. Philadelphia Indemnity Insurance Co., 2015 CO 11, 343 P.3d 951, we reviewed in detail our rationales in Clementi and Friedland, explaining why they did not lead to the same conclusion with respect to notice-of-claim provisions in claims-made insurance policies.  Much of that discussion also explains why we similarly decline to judicially impose a prejudice requirement upon the enforcement of the no-voluntary-payments clause of the policy in this case.

 ¶12 As we emphasized in Craft, an insurance policy is a contract, the unambiguous terms of which must be enforced as written, unless doing so would violate public policy.  Id. at ¶ 34, 343 P.3d at 959.  In fact, the freedom to contract is especially important in the insurance industry, where the terms of a policy distribute risk and define the very product that is bargained for.  Id. at ¶ 35, 343 P.3d at 959 (citing Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1045 (Colo. 2011)).  Unlike the timely notice requirements of the occurrence policies at issue in Clementi and Friedland, the violation of which we characterized, in the absence of any resulting prejudice, as technicalities from which insurers “reap a windfall,” in Craft we found a requirement that the insured provide notice of a claim within the policy period of a claims-made policy to be a fundamental term of the contract, actually defining the scope of coverage.  Id. at ¶ 42, 343 P.3d at 961.  We therefore found that applying the notice-prejudice rule to excuse an insured’s noncompliance with such a contractual provision would essentially rewrite the insurance contract itself and effectively create coverage where none previously existed.  Id. at ¶ 45, 343 P.3d at 961. 

 ¶13 Much like the notice of claim provision in Craft, the contract clause at issue in this case, far from amounting to a mere technicality imposed upon an insured in an adhesion contract, was a fundamental term defining the limits or extent of coverage.  This so-called “no voluntary payments” clause clearly excluded from coverage any payments voluntarily made or obligations voluntarily assumed by the insured without consent, for anything other than first aId.  The insurance policy emphatically stated that any such obligations or payments would be made or assumed at the insured’s own cost rather than by the insurer.

 ¶14 Unlike the notice requirements in Clementi and Friedland, with regard to a remedy for the violation of which we mandated a further demonstration of prejudice, the no-voluntary-payments clause in this case does not purport to impose a duty on the insured to do anything, whether for the purpose of assisting in the insurer’s investigation or defense of a claim, or otherwise.  Nor does it impose a duty on the insured to refrain from doing something the doing of which would violate the terms of the contract and call for an appropriate remedy.  Like the notice of claim requirement of the claims-made policy at issue in Craft, the no-voluntary-payments clause of the contract at issue here actually goes to the scope of the policy’s coverage.  Rather than a provision purporting to bar an insured from voluntarily making payments or incurring expense without the consent of the insurer, for the breach of which the insurer would be absolved of compliance with its obligations under the policy, the no-voluntary-payments  provision makes clear that coverage under the policy does not extend to indemnification for such payments or expenses in the first place, and instead, the no-voluntary-payments clause merely specifies that as uncovered expenses they will not be borne by the insurer.

 ¶15 Even more compellingly than failing to comply with the notice provision in Craft, which, although serving to define the boundaries of coverage in a claims-made policy, could nevertheless be violated simply by an inadvertent omission, voluntarily making a payment, assuming an obligation, or incurring an expense necessarily entails affirmative, and voluntary, action on the part of the insured.  While there will virtually always be room for debate about the contours of any particular no-voluntary-payments clause, whether the insured acts out of ignorance of the coverage or by design, in an attempt to deprive the insurer of its contractually-granted choice to provide a defense or settle the claim, or for some other reason altogether, the enforcement of such a provision according to its terms can hardly be characterized as “‘reap[ing] a windfall’ by invoking a technicality to deny coverage.”  Id. at ¶ 26, 343 P.3d at 957 (quoting and paraphrasing Friedland and Clementi).  As with the notice requirement of the claims-made policy in Craft, depriving an insurer of its choice to defend or settle in the first instance “has important practical implications for the risks that insurers undertake and the premiums that insureds pay.”  Id.; see also Charter Oak Fire Ins. Co. v. Color Converting Indus. Co., 45 F.3d 1170, 1174 (7th Cir. 1995) (Posner, J., enforcing a no-voluntary-payments clause under Iowa law and explaining the alternative could lead to collusive behavior, placing additional risk on insurers and resulting in higher premiums for insureds); see generally The Economics of Insurance Law?A Primer, 19 Conn. Ins. L.J. 29, 67 (2012) (including more thorough explanation of the problem of “moral hazard”).

 ¶16 In this jurisdiction, it is now well-settled that in addition to contractual remedies for breach of an insurance contract, an insurer’s bad faith breach also gives rise to tort liability.  Nunn v. Mid-Century Ins. Co., 244 P.3d 116, 121 (Colo. 2010) (citing Goodson v. Am. Standard Ins. Co. of Wis., 89 P.3d 409, 415 (Colo. 2004)).  To the extent that an insurer unreasonably delays or denies payment of a claim, its insured is provided specific statutory remedies, including specific penalties, costs, and fees.  See §§ 10-3-1115 to -1116, C.R.S. (2015).  Those remedies, however, nowhere include reimbursement for obligations assumed or payments made by an insured that are expressly excluded from coverage by the terms of its policy.  Insuring against the risk of specified class of injuries does not include insuring against the risk of damaged business relationships or the loss of future business contracts that may result from the insurer’s defense against third-party claims, see Charter Oak Fire Ins. Co., 45 F.3d at 1172 (examining the law of a number of jurisdictions in support of this proposition), and damage or loss of this nature does not demonstrate bad faith on the part of the insured. While unreasonably delaying or denying the payment of an insurance claim entitles an insured to more than contractual remedies, never have we suggested that resorting to self-help, by confessing third-party claims in order to maintain ongoing business relationships, can effectively expand coverage beyond the express terms of an insurance policy.

 ¶17 An insured in this jurisdiction is also given wide latitude to protect itself from exposure to liability beyond the limits of its insurance coverage by assigning to the third-party claimant any claim it may have against its insurer for breach of the insurer’s duty of good faith and fair dealing.  See Nunn, 244 P.3d at 120 (recounting history of so-called “Bashor agreements”).  Although not without concern for the risk of collusion and fraud inherent in any settlement between an insured and claimant, as distinguished from a judgment resulting from trial to a neutral factfinder, we have even allowed that a stipulated excess judgment can sometimes be sufficient to establish actual damages for purposes of an assigned bad faith claim.  Id.  Rather than minimizing this inherent lack of reliability or otherwise offering support for Stresscon’s unauthorized settlement with Mortenson, however, our narrowly circumscribed rationale in Nunn not only makes clear that we have not already implicitly sanctioned settlements like the one in this case; in fact, it militates against our doing so now.makes clear that we have not already implicitly sanctioned settlements like the one in this case; in fact, it militates against our doing so now.

 ¶18 With regard to the suggestion that our holding in Nunn necessarily implies that no-voluntary-payments provisions violate public policy and are therefore unenforceable as written, we not only made clear in Nunn that our holding was limited to satisfaction of the damages element of a bad faith claim, and not even the entire bad faith claim itself, but we also expressly indicated that the insurer in Nunn actually granted the insureds permission to enter into their settlement agreement before they did so.  Id. at 118 n.2.  In Nunn, much as in Friedland, because of the procedural posture in which the case reached us, our resolution implied absolutely nothing, for Nunn’s case or any other, about the impact of a provision excluding from coverage any obligation assumed by an insured without the consent of the insurer.

 ¶19 Whether, and if so precisely how, our holding in Nunn concerning the assignment of a pretrial stipulated judgment might be impacted by a defense based on a no-voluntary-payments clause like the one in this case, that holding addressed only the narrow situation in which an insurer declines an offer to settle within policy limits a lawsuit claiming damages against its insured in excess of those limits.  In Nunn we were clearly cognizant of the risk of collusion or fraud inherent in judgments stipulated by an insured without a trial, not to mention the natural alignment of interests between an insured and third-party claimant, against those of the insurer.  See id. at 123.  Nevertheless, we ultimately concluded that such a risk would be tolerable in the limited situation “where an insurer has wrongfully subjected its insured to an excess judgment.”  Id. at 120 (quoting Old Republic Ins. Co. v. Ross, 180 P.3d 427, 434 (Colo. 2008) (itself citing Justin A. Harris, Note, Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation, 47 Drake L. Rev. 853, 875 (1999))). In light of the potentially disastrous effects of being subjected to a judgment beyond the limits of coverage, we held that where an insurer has declined an offer to settle a lawsuit within policy limits, it can be required to bear this risk, as long as it is given an opportunity to assert fraud or collusion as a defense at a trial. Id. at 123. By negative implication, however, our reasoning strongly suggested that in the absence of an insured’s exposure to a judgment in excess of policy limits, we would find that the risk associated with pretrial settlements stipulated to by an insured and third-party claimant, including even those subsequently entered as judgments in ongoing suits, would not similarly be tolerable.

 ¶20 Apart from the fact that in this case Stresscon was never even remotely exposed to a judgment beyond policy limits, the court of appeals’ extension of our notice-prejudice rule to no-voluntary-payments or no-settlement provisions is simply unrelated to an insured’s exposure to excess judgments, or even to bad faith claims in general.  Such a broad public policy dictate would treat no-voluntary-payments clauses of insurance contracts, including the one in this case, as nothing more than a technicality, unenforceable in the absence of prejudice, whether or not any actions of the insurer had exposed its insured to an excess judgment.  The result of such a rule would be to ignore the competing interests and risks of collusion or fraud we acknowledged in Nunn and would effectively deny insurers the ability to contract for the right to defend against third-party claims or negotiate settlements in the first instance. Public policy demands no such restriction on the right to contract.

 ¶21 Despite acknowledging a split among even those jurisdictions imposing a prejudice requirement on breach of notice and cooperation requirements, compare, e.g., Truck Ins. Exch. v. Unigard Ins. Co., 94 Cal. Rptr. 2d 516, 523 (Cal. Ct. App. 2000) (relying on Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G., 476 P.2d 406, 415 (Cal. 1970), in declining to impute prejudice requirement), with Roberts Oil Co. v. Transamerica Ins. Co., 833 P.2d 222, 229 (N.M. 1992) (relying on Kindervater v. Motorists Cas. Ins. Co., 199 A. 606, 608 (N.J. 1938), in imputing prejudice requirement), the court of appeals was moved by those jurisdictions finding that the violation of a no-voluntary-payments or no-settlement provision, as the breach of a condition precedent, nevertheless fails to discharge an insurer’s contractual obligations absent a showing of prejudice.  By contrast, we find any comparison with these other jurisdictions unhelpful, largely because their holdings arise in different insurance contexts, involve altogether differently worded provisions, and are justified by different rationales, often with historical significance unique to the particular jurisdiction in question.  Even in this jurisdiction, our prior judgment upholding the enforcement of an insurance contract, as written in Kesinger v. Commercial Standard Insurance Co., was premised on a substantially different provision that, on its face, purported to void the entire policy in the event the insured voluntarily assumed any liability.  70 P.2d 776, 777–78 (Colo. 1937).  Whatever the continued viability of Kesinger may be, it has little applicability to the no-voluntary-payments clause in this case. 

 ¶22 In order to resolve the case before us today, we need not finely construe this or any other particular no-voluntary-payments provision or opine on the circumstances under which an insurer might be precluded from relying on such a provision to assert exclusions from coverage or deny coverage altogether.  The district court denied Travelers’ motion for summary judgment and its subsequent motion for directed verdict solely on the ground that the no-voluntary-payments clause of its insurance contract with Stresscon was unenforceable unless Travelers was prejudiced by Stresscon’s unauthorized settlement with Mortenson, and the court of appeals affirmed for precisely the same reason.  As we have explained, this was error requiring reversal of the subsequent jury verdict.  In the absence of evidence, or even an assertion, at trial of any separate ground for not enforcing the clause in question as written, Travelers’ motion for directed verdict should have been granted and judgment should have entered in its favor.

 III. 

 ¶23 Because we decline to extend the notice-prejudice rule we applied to the notice provision of an occurrence-based liability policy in Friedland v. Travelers Indemnity Co., 105 P.3d 639 (Colo. 2005), to the no-voluntary-payments clause at issue in this case, the judgment of the court of appeals affirming the district court is reversed.  Because application of the notice-prejudice rule was the sole basis for the district court’s denial of Travelers’ motion for directed verdict and because it was undisputed that Stresscon voluntarily settled and paid the third-party claim for which it sought reimbursement, the case is remanded with directions that the jury verdict be vacated and that a verdict instead be directed in favor of Travelers.the case is remanded with directions that the jury verdict be vacated and that a verdict instead be directed in favor of Travelers.

 JUSTICE MÁRQUEZ dissents, and JUSTICE HOOD and JUSTICE GABRIEL join in the dissent.
 JUSTICE MÁRQUEZ, DISSENTING.
 
 ¶24 The majority holds that an insured who settles a claim without the insurer’s consent, thereby breaching a term of the insurance policy, can never recover benefits as reimbursement for the settlement, regardless of whether the settlement prejudiced the insurer.  In so doing, the majority disregards our own precedent recognizing that, where a provision of an insurance contract does not fundamentally define the scope of coverage, but instead protects the insurer’s opportunity to investigate and defend or settle claims, the insured’s violation of that provision should not present an absolute bar to recovery.  See Friedland v. Travelers Indem. Co., 105 P.3d 639, 648–49 (Colo. 2005); Clementi v. Nationwide Mut. Fire Ins. Co., 16 P.3d 223, 229–30 (Colo. 2001); see also Craft v. Phila. Indem. Ins. Co., 2015 CO 11, ¶¶ 32, 45, 343 P.3d 951, 958, 961.  Instead, where, as here, the insured’s breach of a provision deprives the insurer of adequate opportunity to defend or settle a claim, the insured should be afforded an opportunity to rebut a presumption that the insurer suffered actual prejudice.  Friedland, 105 P.3d at 648–49.  Because I believe that Friedland governs this case, and because the majority’s attempt to equate the no-voluntary-payments clause in this case with the date-certain notice provision in Craft is unpersuasive, I respectfully dissent.

 ¶25 In Friedland, we held that the so-called “notice-prejudice rule” applies to prompt notice provisions in occurrence-based policies.  Id. at 647–48.  The purpose of these prompt notice provisions played a significant role in our reasoning.  See Id.; see also Craft, ¶ 32, 343 P.3d at 961 (observing that “Friedland’s prejudice rationale hinged on the nature of prompt notice requirements”).  Specifically, we discussed the “significant interests” served by a prompt notice requirement, including the insurer’s opportunity to “investigate or defend the insured’s claim” and to receive the insured’s cooperation in “negotiating settlements.”  Friedland, 105 P.3d at 643 (citing Clementi, 16 P.3d at 232); see also Craft, ¶¶ 15, 31, 343 P.3d at 954, 958.

 ¶26 In addition, our decision in Friedland emphasized the fact that the insured failed to notify the insurer of the suit against him until after the litigation settled.  Friedland, 105 P.3d at 641, 642, 647, 648.  We concluded that, where notice is not given until after settlement, the insurer is deprived of the opportunity to defend or settle the claim, and thus, prejudice to the insurer must be presumed under such circumstances.  Id. at 647–48.  Nonetheless, we recognized that, in some instances, an insurer may not be prejudiced by an insured’s failure to provide prompt notice.  Id. at 648.  We therefore concluded in Friedland that an insured’s breach of a prompt notice provision should not present an absolute bar to recovery, but rather, where notice is not given until after settlement, the insured must be afforded an opportunity to rebut a presumption that the insurer was prejudiced, and the insurer must then show, by a preponderance of the evidence, that it suffered actual prejudice from the breach.  See Id. at 648–49.

 ¶27 In Craft we addressed a fundamentally different provision in an altogether different type of policy: a date-certain provision in a claims-made policy.  Craft, ¶¶ 2–3, 343 P.3d at 952–53.  We emphasized in that case the conceptual differences between occurrence and claims-made liability policies, and observed that the date-certain notice requirement—unique to claims-made policies—was integrally related to the nature of such policies.  Id. at ¶ 28, 343 P.3d at 957.  This aspect was a critical fact that guided our resolution of that case.  Id. at ¶ 30, 343 P.3d at 958.

 ¶28 We observed that, unlike an occurrence policy, which provides coverage for events that happen during a policy period, even if the claim is brought years later, a claims-made policy provides potential coverage for claims brought against the insured during the policy period and reported to the insurer by a certain date, even if the underlying event giving rise to liability occurred years earlier.  Id. at ¶¶ 2, 28, 343 P.3d at 953, 957.  Thus, under a claims-made policy, timely notice of the claim to the insurer is a prerequisite to coverage, and the risk to the insurer passes when the policy period expires.  Id. at ¶¶ 28–29, 343 P.3d at 957–58.  A date-certain notice requirement in a claims-made policy therefore “serves only to effectuate the agreed-upon temporal limits of coverage,” Id. at ¶ 15, 343 P.3d at 954, and fulfills a very different function than a prompt notice requirement, which “serves to allow the insurer to investigate the claim and negotiate with the third party asserting the claim,” Id. at ¶ 32, 343 P.3d at 961.  Accordingly, we declined to apply the notice-prejudice rule to date-certain provisions in claims-made policies because doing so would essentially rewrite the insurance contract and effectively create coverage where none previously existed.  Id. at ¶ 45, 343 P.3d at 961.

 ¶29 Contrary to the majority’s assertions, the no-voluntary-payments provision at issue here serves the same interests as the prompt notice provision we addressed in Friedland.  Indeed, the majority acknowledges that a no-voluntary-payments clause is intended to prevent an insured from unilaterally settling a claim and thereby “depriving an insurer of its choice to defend or settle in the first instance.”  Maj. op. ¶ 15.  This is precisely the interest of the insurer that we recognized is served by the prompt notice provision at issue in Friedland.  105 P.3d at 643–44, 648–49.“depriving an insurer of its choice to defend or settle in the first instance.”  Maj. op. ¶ 15.  This is precisely the interest of the insurer that we recognized is served by the prompt notice provision at issue in Friedland.  105 P.3d at 643–44, 648–49.

 ¶30 In my view, the majority’s attempt to equate the no-voluntary-payments provision at issue with the date-certain notice requirement of the claims-made policy in Craft is unpersuasive.  Unlike the date-certain notice requirement in the claims-made policy in Craft, a standard no-voluntary-payments provision is not a “fundamental term of the insurance contract” because it does not define the policy’s temporal boundaries nor does it define the scope of the policy’s coverage.  Cf. Craft, ¶¶ 32, 45, 343 P.3d at 958, 961.

 ¶31 The majority suggests that a no-voluntary-payments provision is a fundamental term defining the limits or extent of coverage because it purportedly “exclude[s] from coverage” any payments made or obligations assumed by the insured without the insurer’s consent.  Maj. op. ¶ 13.  However, the no-voluntary-payments clause in this case (a standard provision in many types of insurance contracts) states simply that “No Insured will, except at that Insured’s own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.”  This provision does not define the scope of coverage or describe a policy exclusion or limitation.  It is thus wholly unlike the date-certain notice provision in a claims-made policy that we described in Craft.

 ¶32 The majority’s attempt to distinguish the no-voluntary-payments provision from the prompt notice provisions in Clementi and Friedland is likewise unconvincing.  The majority reasons that, unlike the prompt notice provisions in those cases, a no-voluntary-payments provision “does not purport to impose a duty on the insured to do anything . . . [n]or does it impose a duty on the insured to refrain from doing something . . . .”  Maj. op. ¶ 14.  I disagree.  The no-voluntary-payments provision does impose a duty on the insured—a duty to obtain the insurer’s consent before voluntarily making a payment, or assuming an obligation, or incurring an expense.   (Phrased in the negative, it imposes a duty to refrain from taking such actions without the insurer’s consent.)  Indeed, just like the prompt notice provision in Friedland—which appeared in the policy under “Insured’s Duties in the Event of Occurrence, Claim or Suit,” Friedland, 105 P.3d at 642—the no-voluntary-payments clause at issue here appears in the Travelers’ policy under “Duties in the Event of Occurrence, Offense, Claim or Suit.”  In short, the majority’s attempt to distinguish Friedland on this basis is both inaccurate and unpersuasive.

 ¶33 In my view, the no-voluntary-payments provision serves virtually the same interests of the insured that we discussed in Friedland.  It protects the insurer’s opportunity to investigate, defend, and settle a claim.  Moreover, our holding in Friedland was premised on the fact that the insured did not give notice to the insurer until after settlement of the claim, thus depriving the insurer of those important interests.  See Id. at 647–48.  Because the insured’s breach of the no-voluntary-payments clause at issue here implicates virtually identical concerns, I believe our analysis in Friedland controls the outcome of this case.

 ¶34 Notably, the Friedland presumption of prejudice recognizes that an insured’s unilateral action to settle or voluntarily pay a claim can deprive the insurer of an opportunity to investigate and defend the claim and participate in settlement negotiations.  Yet for the reasons we articulated in Friedland, where the insurer is not in fact prejudiced, an insured’s breach of a no-voluntary-payments clause should not present an absolute bar to recovery.  Thus, in accordance with Friedland, I would hold that an insured’s breach of a no-voluntary-payments clause gives rise to a rebuttable presumption of prejudice to the insurer, and the insured has the burden of going forward with evidence to dispel that presumption.  If such evidence is presented, the presumption loses any probative force it may have and the insurer must then show by a preponderance of the evidence that it suffered actual prejudice from the voluntary payment or settlement.  See Id. at 648–49.  Because the majority’s efforts to distinguish this case from Friedland are unconvincing, I respectfully dissent.

 I am authorized to state that JUSTICE HOOD and JUSTICE GABRIEL join in this dissent.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || April 25, 2016

Back